**Talia Y. Guerriero**, OSB #115271
talia@beaconforjustice.com
**David C. Higgs**, OSB #114193
david@beaconforjustice.com
Beacon Employment Law
1000 SW Broadway, Suite 2130
Portland, OR 97205
503-673-1388 (Phone)
503-564-4689 (Fax)
Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **LEANN JOHNSON**, an individual, | Case No. 6:25-cv-00470-AA |
| Plaintiff, | |
| v. | |
| **STATE OF OREGON,** by and through the **OREGON HEALTH AUTHORITY**; and **SEJAL HATHI**, in her individual and official capacities; **BERRI LESLIE**, in her individual and official capacities; **JENNIFER MIDKIFF**, in her individual and official capacities**; ANGELA SIFUENTEZ**, in her individual and official capacities; and **JESSICA KNIELING**, in her individual and official capacities; | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE** |
| Defendants. | |

*/ / /*

## TABLE OF CONTENTS

I.    **INTRODUCTION**................................................................................................ 2

II.   **STATEMENT OF FACTS**............................................................................... 2

III.   **THE COURT SHOULD DENY DEFENDANTS' MOTIONS TO DISMISS** ............. 5

    a.  **Legal Standard for Motions to Dismiss** ........................................................... 6

    b.  **Plaintiff Properly Pled Claims Against Individual Defendants In Their Official Capacities for Her First, Second, Third, & Fourth Claims for Relief** ...................... 6

        *1. Defendants Unequivocally Waived Their Eleventh Amendment Immunity* ................... 6

        *2. Eleventh Amendment Immunity Does Not Apply to Prospective Injunctive Relief* ........ 7

    c.  **Plaintiff Properly Pled an Unlawful Deprivation of a Property Interest in Her Job for Her Third Claim for Relief** ........................................................................ 9

        *1. Defendants Misapply the "Profession vs. Job" Analysis to Property Interest Claims When It Applies Solely to Liberty Interest Claims* .............................................. 9

        *2. Defendants Blatantly Ignore Plaintiff's Specific Allegations and Continue to Conflate and Confuse Legal Precedent* .......................................................................... 11

    d.  **Plaintiff Properly Pled a Due Process Right to a Name Clearing Hearing Based on Stigmatizing Statements For Her Fourth Claim for Relief**................................. 14

    e.  **Plaintiff Sufficiently Pled Facts Connecting the Individual Defendants' Conduct to Unlawful Employment Practices and Constitutional Violations For Her First, Second, Third, Fourth, Sixth, and Tenth Claims for Relief**................................ 18

    f.  **Defendants Leslie, Sifuentez, Midkiff, Knieling, and Hathi are Not Entitled to Qualified Immunity on Plaintiff's Third and Fourth Claims for Relief**................ 22

        *1. Plaintiff Sufficiently Alleges Acts in Violation of Clearly Established Constitutional Rights That No Reasonable Official Could Believe Was Lawful* ..................................... 23

        *2. Plaintiff Alleges Defendants' Relevant Conduct with Sufficient Specificity* ................. 25

IV.   **THE COURT SHOULD DENY DEFENDANTS' MOTION TO SUBSTITUTE THE STATE FOR INDIVIDUAL DEFENDANTS** ................................................. 27

i

      **a.** **Legal Standard for Motions to Substitute the State** ..................................... 27

      **b.** **The State Should Not Be Substituted for the Individual Defendants in Claims Six And Ten** ............................................................................................................ 27

**V.**   **THE COURT SHOULD DENY DEFENDANTS' MOTIONS TO STRIKE** ............. 28

      **a.** **Legal Standard for Motions to Strike** ...................................................... 28

      **b.** **Defendants' Motion to Strike Plaintiff's Requests for Prospective Injunctive Relief Should Be Denied.** ............................................................................................. 28

        *1. Defendants Waived Their Eleventh Amendment Immunity Arguments As To Injunctive Relief* ................................................................................................................... 29

        *2. Plaintiff's Harms and Requested Injunctive Relief Are Concrete, Not Hypothetical* ... 29

      **c.** **Defendants' Motion to Strike  Background Context Should Be Denied.** ................... 31

        *1. The Allegations at Issue Are Not "Prejudicial"* .......................................... 31

        *2. The Allegations at Issue Are Related to Several Elements of Plaintiff's Claims, Only One of Which Requires Establishing an "Adverse Employment Action"* ......................... 32

**VI.**   **REQUEST FOR LEAVE TO FILE SECOND AMENDED COMPLAINT IF NECESSARY** ....................................................................................................... 35

**VII.** **CONCLUSION** ............................................................................................... 36

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009 ........................................................................7

*Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ................6

*Blanks v. Univ. of Oregon*, No. 6:17-CV-01578-AA, 2018 WL 4924546 (D. Or. Oct. 10, 2018)............23

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 595 (8th Cir. 2009 ......................................6, 23

*California v. Deep Sea Research, Inc.* 523 U.S. 491 (1998) ............................................8

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 142 S. Ct. 9, 211 L. Ed. 2d 170 (2021) ..................30

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995) ...........................................................23

*Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836 (9th Cir. 1997) ................................34

*Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836 (9th Cir. 1997)................................10

*Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108 (9th Cir. 2011)........................................25

*Escondido v. Emmons*, 586 U.S. 38, 139 S. Ct. 500, 202 L.Ed.2d 455 (2019)......................27

*Ex parte Young*, 209 U.S. 123 (1908)..................................................................9

*Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962) ..................................41

*Gahr v. Marion Cnty.*, No. 6:22-CV-01188-MTK, 2025 WL 835648 (D. Or. Mar. 17, 2025)...............31

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) ...........................................9

*Irvine v. Potter*, 2013 WL 1750473 (D. Or. 2013)........................................................24

*Jenkins v. McKeithen*, 395 U.S. 411 (1969)...............................................................6

*Khamnayev v. Schnitzer Steel Indus., Inc.*, No. 3:22-CV-00391-AR, 2023 WL 4936815 (D. Or. June 16, 2023)........................................................................................................6

*Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002)............................7

*Liberty Nat. Prods., Inc. v. Hoffman*, No. 3:13-CV-00886-BR, 2017 WL 4855404 (D. Or. Oct. 26, 2017) ........................................................................................................32

*Marquard v. New Penn Fin., LLC*, No. 3:17-CV-549-SI, 2017 WL 4227685 (D. Or. Sept. 22, 2017).......6

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1109 (9th Cir. 2004)..................................................24

*Menchu v. Multnomah County Health Department*, 2021 W 2450780 (D.Or. May 3, 2021) .................33

*Mitchell v. Franchise Tax Board, 209 F.3d 1111 (9th Cir. 2000)*...........................................................8

*Paul v. Davis*, 424 U.S. 693 (1976), and *Board of Regents v. Roth*, 408 U.S. 564 (1972)......................28

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)..............................................7, 8

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 142 S. Ct. 4, 211 L. Ed. 2d 164 (2021) ...............................30

*Schultz v. Wells Fargo Bank*, Nat. Ass'n, 970 F. Supp. 2d 1039 (D. Or. 2013) ....................................24

*Scott v. PacifiCorp, No*. 1:22-CV-00174-AA, 2022 WL 2452281 (D. Or. July 6, 2022).......................32

*Snow v. Summers*, No. 10–6224–HO, 2011 WL 1545610 (D. Or. Apr. 21, 2011)................................36

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) ........................................................................25

*Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059 (8th Cir. 2000)...............................................................33

*Sweet v. Langley*, 798 F. App'x 135 (9th Cir. 2020).........................................................................26

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ...................................................................................30

*Thames v. City of Portland*, No. 3:16-CV-01634-PK, 2017 WL 4392044 (D. Or. Oct. 3, 2017)............36

*Thorn v. State, Dept of Taxation*, 173 F.3d 862 (9th Cir. 1999) ..........................................................10

*United States v. Hougham*, 364 U.S. 310, 81 S. Ct. 13, 5 L. Ed.2d 8 (1960) .......................................41

*United States v. Webb*, 655 F.2d 977 (9th Cir. 1981).......................................................................41

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635 (2002)..................................9

## STATUTES

42 U.S.C. § 1983 .............................................................................................................................11

42 U.S.C. 1983..............................................................................................................................27

*Bd. of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)................................. 17, 28

*Brady v. Gebbie*, 859 F.2d 1543 (9th Cir.1988) ..................................................................11

*Campanelli v. Bockrath*, 100 F.3d 1476 (9th Cir. 1996)................................................. 17, 21

*Campenelli v. Bockrath*, 100 F.3d 1476 (9th Cir. 1988) ......................................................18

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ................................................28

*Cox v. N. Va. Transp. Comm'n*, 551 F.2d 555 (4th Cir.1976) ........................................ 18, 28

*Cox v. Roskelley*, 359 F.3d 1105 (9th Cir. 2004) .................................................................16

*Dunn v. Reynolds School Dist. No. 7*, 2010 WL 4718781 (D. Or. 2010) ...................11, 12, 14

*Elliot v. Staton*, 2012 WL 2374986 (D. Or. 2012) ...............................................................15

*Engquist v. Oregon Department of Agriculture*, 478 F.3d 895 (9th Cir. 2007) .............. 13, 15

*Goldsby v. Safeway Inc.,* No. 3:16-CV-02056-HZ, 2018 WL 297583 (D. Or. Jan. 4, 2018)...................40

*Iqbal*, 556 U.S. at 678 .........................................................................................................23

*Johnson v. Riverside Healthcare System, LP,* 534 F.3d 1116 (9th Cir. 2008).......................40

*Lopez v. Department of Human Services, Seniors and People with Disabilities*, Case No. MA-2-04 ......28

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................................... 27, 38

*McNeill v. Butz*, 480 F.2d 314 (4th Cir. 1973) .....................................................................18

*Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022 (9th Cir. 1998) ...........................40

*Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997) .............................................................17

ORS 659A.030...................................................................................................................27

ORS 659A.199...................................................................................................................27

*Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678 (9th Cir. 2017)......................................40

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292 (4th Cir. 2006)..........................18

*Rush v. Perryman*, 579 F.3d 908 (8th Cir. 2009).................................................................19

*Tibbetts v. Kulongoski*, 567 F.3d 529 (9th Cir. 2018) .........................................................20

*Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968 (9th Cir. 2002)................................38

*Woods v. Graphic Communications,* 925 F.2d 1195 (9th Cir. 1991).....................................................40

## **CONSTITUTIONAL PROVISIONS**

Title VII .................................................................................................................................23

## I.    INTRODUCTION

Defendants' Motion to Dismiss and to Substitute and to Strike Plaintiff's Amended Complaint misstates and misapplies relevant legal standards and fails to acknowledge well-pled, material facts. For the reasons below, the Court should dismiss Defendants' motions.

## II.    STATEMENT OF FACTS

After nearly 14 years of productive and loyal service that resulted in several leadership awards, the State of Oregon, Oregon Health Authority ("OHA") decided to terminate Plaintiff's employment then surreptitiously altered her employment status in a way intended to deprive her of a property interest without notice and only after she raised several explicit complaints of unlawful employment practices. Am. Compl. ¶¶ 1-54. Defendants OHA and Hathi subsequently released a letter written by Hathi containing stigmatizing defamatory statements which continues to prevent Plaintiff from acquiring employment in her field of expertise.

Over the years of her employment, Plaintiff, a Black woman, experienced and witnessed many concerns of race discrimination, which culminated in Plaintiff filing a race discrimination and retaliation complaint with the Bureau of Labor & Industries ("BOLI") on December 21, 2023. *Id*. ¶¶ 1, 22. Shortly thereafter, in January of 2024, Defendant Hathi[1] was hired as OHA Director and immediately showed hostility toward employee feedback and complaints. *Id.* ¶ 23.

---

[1] Defendants' statement that "Dr. Hathi is also a woman of color" is irrelevant as to whether Dr. Hathi could engage in race discrimination, particularly as a non-Black woman against a Black woman. Defs' Mot. to Dismiss, at 5; *see, e.g.,* "Summary of Key Provisions: EEOC Enforcement Guidance on Harassment in the Workplace," *available at* https://www.eeoc.gov/summary-key-provisions-eeoc-enforcement-guidance-harassment-workplace. ("Can a person be harassed by somebody with the same protected characteristic? Yes. Harassment can occur when the harasser shares the same protected characteristic as the victim.").

After BOLI notified OHA of Plaintiff's complaint on February 28, 2024, Defendant Hathi became increasingly hostile towards Plaintiff and treated her more harshly than similarly-situated peers. *Id.* ¶¶ 25, 26. For example, Defendant Hathi told Plaintiff to choose her words "wisely" in an ominous and threatening manner. *Id.* ¶ 33. On another occasion, Defendant Hathi publicly demeaned OHA leadership team members during a board meeting, calling them "judgment[al]," "belittling," and "punitive." *Id.* ¶¶ 33-34.

In April 2023, Plaintiff filed internal complaints about her concerns about of OHA's failure to adhere to policy, systemic issues related to pay equity, ongoing microaggressions toward Black agency staff, and the leadership's failure to heed legitimate and well-founded allegations of racism and retaliation. *Id.* ¶ 21, 29. Plaintiff spoke out publicly about such issues at times, including voicing support for another Black employee who complained about racial bias in the agency. *Id.* ¶ 30. On May 29, 2024, Plaintiff provided to a Human Resources ("HR") Investigator details about her view of Defendant Hathi's policy violations related to retaliation, professionalism, hostile work environment, and patterns of mistreatment, stating that she was "experiencing a hostile work environment" and that "additional women of color in the agency leadership are wondering the same." *Id.* ¶ 39.

Immediately thereafter, in or around mid-June 2024, Defendant Hathi decided to terminate Plaintiff and sent HR Director Jennifer Midkiff a letter asking her to process Defendant Hathi's termination. *Id.* ¶ 42, 48-52. Defendant Hathi's letter included stigmatizing statements about Plaintiff, including baseless allegations that she impacted the "psychological safety" of others, caused delays and closures of important civil rights investigations, chose to act differently within OHA than with external partners, prioritized her own personal interests, caused an erosion

of trust and confidence, undermined trust and morale on the agency leadership team, and displayed an inability or unwillingness to constructively receive feedback. Plaintiff had not heard these allegations during her tenure. *Id.* ¶ 42, 48. Further, Defendant Hathi's letter to Ms. Midkiff blatantly included a reference to Plaintiff's open discrimination claims. *Id.* ¶ 52.

After Defendant Hathi's decided to terminate Ms. Johson, Ms. Midkiff determined that Plaintiff's personnel file lacked the necessary components required to fulfill ORS 240.205(4), which has the effect of classifying Plaintiff as a "management service" employee (and thus, an employee with a property interest in her job). *Id.* ¶ 42. Ms. Midkiff asked her staff to prioritize "sourcing" an approval letter from the Director of Administrative Services ("DAS") that would reclassify Plaintiff for the purpose of allowing OHA to terminate her without due process protections she otherwise would have had as a management service employee. *Id.*

The details of the plot to prevent Plaintiff from exercising her constitutional rights after the decision had been made to terminate her employment include intentional acts by each of the individual defendants in this case. On June 13, 2024, Jessica Knieling, the Director DAS within the State of Oregon, directed staff to place a memorandum in Plaintiff's file to convert Plaintiff's position from "management service" to "unclassified service." The purpose of taking this action and not informing Plaintiff was to excise any property interest from the position Plaintiff held without running into any roadblocks they might have otherwise had due to their failure to meet all the statutory requirements of an executive position. *Id.* ¶ 43. On or around June 18, 2024, Berri Leslie, DAS Chief Operating Officer, signed the memorandum converting Plaintiff's position status without notice or process. *Id.*

Plaintiff was never made aware of this change, and the State never offered - nor did Plaintiff ever accept – her "new" unclassified service position. *Id.* Instead, less than three days later on June 21, 2024, Defendant Hathi and Angela Sifuentez, OHA's HR Manager, summarily terminated Plaintiff's employment without notice, due process, or opportunity to be heard. *Id.* ¶ 44. Ms. Sifuentez stated during the termination meeting that the meeting was "not [for] fact-finding" and that they would not offer Plaintiff another position within the State. *Id.* OHA subsequently released Defendant Hathi's letter to the media, contrary to typical practice concerning confidential personnel information. *Id.* ¶ 48.

## III. THE COURT SHOULD DENY DEFENDANTS' MOTIONS TO DISMISS

Each of Defendants' arguments fails for distinct reasons:

- First, their Eleventh Amendment argument fails because they waived their immunity and because it ignores the well-established *Ex parte Young* exception that permits prospective relief for Eleventh Amendment claims.
- Second, their property interest argument improperly conflates the frameworks for property versus liberty interests under the Fourteenth Amendment.
- Third, their liberty interest argument both mischaracterizes the stigmatizing nature of the statements at issue and ignores that Plaintiff has adequately pled harm to her professional reputation.
- Fourth, their argument that individual defendants lack sufficient connection to the alleged violations contradicts their own acknowledgment of each defendant's specific role in the coordinated effort to strip Plaintiff of due process protections and unlawfully terminate her employment.
- Fifth, their qualified immunity argument seeks to resolve factual disputes inappropriate for resolution at the motion to dismiss stage, particularly where the legal violations alleged – racial discrimination, retaliation, and denial of due process – have been clearly established for decades.

As detailed below, Defendants' Motions should be denied in their entirety because the Amended Complaint contains allegations satisfying applicable requirements at the motion to dismiss stage.

### a. Legal Standard for Motions to Dismiss

There is a "powerful presumption against rejecting pleadings for failure to state a claim." *Marquard v. New Penn Fin., LLC*, No. 3:17-CV-549-SI, 2017 WL 4227685, at *11 (D. Or. Sept. 22, 2017). A court must accept as true all well-pled facts of an Amended Complaint, whether or not a defendant chooses to overlook the facts actually pled. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 595 (8th Cir. 2009). The Court must also construe the facts, along with any reasonable inferences, in favor of the pleader. *Id.*

Dismissal is appropriate only if the complaint fails to contain "sufficient factual matter, accepted a true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he pleading standard of Rule 8 [] does not require detailed factual allegations to establish plausibility." *Khamnayev v. Schnitzer Steel Indus., Inc.*, No. 3:22-CV-00391-AR, 2023 WL 4936815, at *7 (D. Or. June 16, 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 at 678-79 (2009)).

### b. Plaintiff Properly Pled Claims Against Individual Defendants In Their Official Capacities for Her First, Second, Third, & Fourth Claims for Relief

Defendants ask the Court to dismiss Plaintiff's First, Second, Third, and Fourth Claims for Relief against Individual Defendants in their "official capacity" by invoking Eleventh Amendment immunity. Defendants' motion should be dismissed because (i) it is in violation of their unequivocal waiver of the immunity, and (ii) the Eleventh Amendment does not bar prospective relief against state employees in their official capacities.

### 1. *Defendants Unequivocally Waived Their Eleventh Amendment Immunity*

As a threshold matter, Defendants cannot now invoke Eleventh Amendment immunity after unequivocally waiving this defense during the meet and confer process. It is well-established that Defendants may waive their Eleventh Amendment immunity and that courts have held that Defendants may not successfully invoke Eleventh Amendment immunity after waiver. *See, e.g., Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 624 (2002); *Aljabari v. University of Massachusetts*, 846 F.3d 123, 128 (1st Cir. 2017).

Here, Defendants affirmatively waived the assertion of Eleventh Amendment immunity through defense counsel's assertion that he had "authority to waive our assertion of [*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)] so that the state law claims can be maintained in federal court." Guerriero Decl. ¶ 1, Ex. 1. On June 10, 2025, Defense counsel confirmed Plaintiff's counsel email as follows:

> "On April 9, 2025, you asked Plaintiff to withdraw state law claims against the State of Oregon and to withdraw claims against the individuals in their 'official capacities' based upon *Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984); (Pennhurst II); Mitchell v. Franchise Tax Board, 209 F.3d 1111 (9th Cir. 2000)*. . . . On April 29, 2025, you affirmatively waived the assertion of sovereign immunity and agreed to jurisdiction in the Federal District Court of Oregon so that all claims can be maintained in federal court. Please confirm."

*Id.* *Pennhurst* explicitly dealt not only with Eleventh Amendment immunity against the state itself, but also with the application of Eleventh Amendment immunity to state employees in their "official capacities." Having made this strategic decision to consolidate all claims in federal court, Defendants cannot now seek dismissal based on immunity they waived.

Accordingly, Defendants' Eleventh Amendment challenge should be rejected.

    2.  *Eleventh Amendment Immunity Does Not Apply to Prospective Injunctive Relief*

Nonetheless, Eleventh Amendment immunity does not apply to Plaintiff's claims for prospective relief. Defendants cite *California v. Deep Sea Research, Inc.* 523 U.S. 491, 501 (1998), for the general rule barring lawsuits against employees in their official capacities. Defs.' Mot. to Dismiss, at 6. However, the general rule does not apply to the types of prospective injunctive relief that Plaintiff requests in her Amended Complaint.

The *Ex parte Young* doctrine allows suit against individuals in their official capacities for prospective injunctive relief to remedy and prevent ongoing violations of federal law. *Ex parte Young*, 209 U.S. 123 (1908); *see also, Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). As the Supreme Court explained in *Verizon Maryland*, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 645 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (cleaned up). In *Verizon Maryland*, the Court found the plaintiff's complaint met the straightforward inquiry simply because the prayer sought injunctive relief. *Id.*

In the instant case, Plaintiff has requested this Court provide prospective injunctive relief in each of her first four Claims. *See,* Am. Compl. ¶¶ 66, 76, 86, 95. Plaintiff requests "[i]njunctive relief prohibiting further violations," "[n]otice, a post-termination hearing, and a name-clearing hearing," and "reinstatement." *Id.* ¶¶ 47, 145.[2] A post-termination hearing or a name-clearing hearing and reinstatement constitute prospective injunctive relief. *See, e.g.*, *Thorn v. State, Dept*

---

[2] Should the Court determine it is necessary, Plaintiff seeks leave to amend to re-state the request for reinstatement more explicitly in the Prayer for Relief.

*of Taxation*, 173 F.3d 862 (9th Cir. 1999) ("Thorn's request for a name-clearing hearing to vindicate a cognizable liberty interest, seeks prospective injunctive relief, is within section 1983, and is not barred by the 11th Amendment."); *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 837 (9th Cir. 1997) (finding that a request for reinstatement constitutes prospective injunctive relief). No additional inquiry is necessary. In sum, the individual defendants are properly maintained in the Amended Complaint in their "official capacity" pursuant to *Ex parte Young*.

For these reasons, the Court should deny Defendants' motion to dismiss Plaintiff's First, Second, Third, and Fourth Claims for Relief.

### c. Plaintiff Properly Pled an Unlawful Deprivation of a Property Interest in Her Job for Her Third Claim for Relief

Defendants make two arguments about Plaintiff's "profession vs. job" that are difficult to comprehend because (1) Defendants fundamentally misapply Fourteenth Amendment jurisprudence on liberty interests to property interests, and (2) Defendants ignore Plaintiff's well-pled allegations "profession", "chosen field", and "occupational liberty." Am. Compl. ¶ 53.

#### 1.  *Defendants Misapply the "Profession vs. Job" Analysis to Property Interest Claims When It Applies Solely to Liberty Interest Claims*

Defendants have made a fundamental error in their Fourteenth Amendment constitutional analysis that permeates their entire argument and thereby renders all of their legal conclusions invalid. Plaintiff's Third Claim for Relief alleges an unlawful deprivation of her property interest in her State employment in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. Am. Compl. ¶¶ 77-86. Defendants wrongly argue that Plaintiff's Third Claim for Relief fails because she "does not claim a loss of profession, merely a loss of a job." Defs.' Mot. to Dismiss, at 7.

This argument conflates **property interests**, which protect specific "jobs" or employment positions, with **liberty interests**, which only protect the right to pursue a "profession" or "occupation." In other words, the "profession vs. job" distinction is relevant only to the Fourth Claim for Relief for a deprivation of liberty interests, not the Third Claim for Relief related to property interests.

The Court in *Dunn v. Reynolds School Dist*. *No*. *7*, 2010 WL 4718781 (D. Or. 2010) correctly recognized these separate analytical frameworks. First, the Court recognizes that public employees have a "constitutionally protected **property interest** in continued employment if [the employee] has a 'reasonable expectation or a "legitimate claim of entitlement" to it.' *Id.* at *7 (citing *Brady v. Gebbie*, 859 F.2d 1543, 1547 (9th Cir.1988)). The *Dunn* Court also described that a "legitimate claim of entitlement arises if it is created by existing rules or understandings that stem from an independent source, such as state law" or a "statute, rule or contract." In *Dunn*, the plaintiff-employees' property interest arose from contracts. Here, Plaintiff properly alleges a property interest in her employment that arises from statute, specifically ORS Chapter 240.[3] Am. Compl. ¶ 42-43.

Reviewing the *Dunn* Court's analysis in its entirety proves Defendants' confusion here. The *Dunn* court addresses the plaintiff's loss-of-employment **property interest** claim in Section

---

[3] Defendants also appear to inappropriately claim that Plaintiff is an "unclassified" employee in the heading of their argument. Plaintiff adequately alleges that she was technically a management service employee either before and/or after June 18, 2024 pursuant to ORS Chapter 240, which provided her with a property interest in her employment. Am. Compl. ¶ 42-43. Since the Court accepts Plaintiff's allegations as true on a motion to dismiss, Defendants' characterization of her employment is irrelevant (and erroneous) for the purposes of the motion to dismiss.

II.A.1.a, as a separate analysis from the plaintiff's loss-of-profession-**liberty interest** claim in Section II.B.1. The *Dunn* Court addresses the plaintiff's rights to their specific jobs as school principals in Section II.A.1.a while addressing whether Defendants' actions foreclosed access to the entire profession in Section II.B.1.

In other words, the *Dunn* court found the plaintiffs had valid property interests in their employment contracts while separately analyzing whether they could pursue substantive due process claims for interference with their profession. The Court here should apply a similar analytical framework, which means that all of Defendants' arguments are irrelevant to Plaintiff's Third Claim for Relief.

For these reasons, the Court should deny Defendants' Motion to Dismiss Plaintiff's Third Claim for Relief related to Plaintiff's property interest in her State employment.

   2.  *Defendants Blatantly Ignore Plaintiff's Specific Allegations and Continue to Conflate and Confuse Legal Precedent*

Should the Court find that the "job vs. profession" analysis applies to Plaintiff's Third Claim for Relief for her property interest in her State employment, Defendants nonetheless inaccurately argue at length that Plaintiff pled only that she was deprived of a property interest in her "job" as opposed to her "occupation." While it is true that substantive due process **liberty** claims must allege a loss of profession rather than a job, a simple review of the Amended Complaint shows that Plaintiff pled:

> "Defendants OHA and Hathi intentionally and inaccurately blamed Plaintiff for its own systemic problems, misconstrued facts, and then publicized the position in a way that has **effectively 'denylisted' Plaintiff from her occupation** and from **practicing her profession** – both within and outside the government. Defendants' actions have made it virtually impossible for Plaintiff to find employment or will require a protracted period of unemployment in her chosen field. Defendants' conduct has seriously damaged Plaintiff's

standing in her relevant communities. Since her termination, Plaintiff has repeatedly applied for jobs in **her chosen field** for which she was qualified and overqualified and has been repeatedly rejected."

*Id.* ¶ 53 (emphasis added); *see also, Engquist v. Oregon Department of Agriculture*, 478 F.3d 895 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2009). It is difficult to imagine how much clearer Defendants believe a reference to "profession" must be in order to meet the applicable standard. Defendants' brief seemingly ignores Paragraph 53 and instead provides a rather lengthy survey of case law in an attempt to undermine a legal position that **Plaintiff has not taken**. Given the clear references in the Amended Complaint to "profession", "chosen field", and "occupational liberty", the Court should reject Defendants' attempt to dismiss Plaintiff's Third Claim for Relief on this erroneous basis.

Furthermore, Defendants miss the mark in their reliance on *Dunn*, 2010 WL 4718781, in an attempt to establish a requirement that a Plaintiff must allege the State acted in a regulatory or legislative capacity rather than its capacity as an employer. First, Defendants' citation to *Dunn* is misleading in stating "the Court could not cite one case in which a substantive due process claim was sustained against a government acting as an employer." Defs.' Mot. to Dismiss, at 8. However, there is no indication in the *Dunn* Court's decision that it tried to find "one case" but could not do so. Rather, the *Dunn* Court simply stated – in the context of the plaintiffs' substantive due process **liberty** claim – that "[a]lmost all of the Ninth Circuit cases recognizing this substantive due process right dealt with government legislation or regulation. . . ." *Dunn*, 2010 WL 4718781 at *12.

In other words, *Dunn* does not in any way foreclose the possibility that an employee could allege a substantive due process claim against a government entity as an employer. In fact,

the *Dunn* court expressly acknowledged that the plaintiff adequately stated a substantive due process liberty claim by alleging that she was terminated, and that the termination resulted in a "'black mark' and the corresponding inability to find employment elsewhere as a principal." *Id.*; *see, e.g., Enquist*, 478 F.3d at 997-98 (acknowledging blacklisting as sufficient).

Finally, Defendants argue that all substantive due process claims in employment are categorically barred, stating "even if a claim of substantive due process *might* lie, it could not be maintained because the defendants cannot be charged with knowingly violating the law and are therefore entitled to qualified immunity." Defs.' Mot. to Dismiss, at 8. Defendants appear to rely on *Elliot v. Staton*, 2012 WL 2374986 (D. Or. 2012) in stating:

> "And in *Elliot []* the Court made clear that, while the matter was still unresolved by the Ninth Circuit, it was a '**heads defendant wins, tails plaintiff loses**' situation in that either there is no right or, because the right is not firmly established, a defendant must receive an immediate grant of qualified immunity."

*Id.* at 8-9 (emphasis added). However, this characterization appears nowhere in *Elliot* decision. The court made no such dismissive statement about substantive due process rights in the employment context. The misattribution is significant because the actual *Elliot* decision was a careful legal analysis of qualified immunity doctrine rather than a broad foreclosure of any substantive due process claims in the employment context. In fact, the *Elliot* court's analysis proceeded under the assumption that such substantive due process rights could exist and focused instead on whether the laws at issue were "clearly established" for qualified immunity purposes.

In sum, Defendants' motion to dismiss the Third Claim for Relief should be denied.

/ / /

/ / /

Page 13 of 42 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

**d.  Plaintiff Properly Pled a Due Process Right to a Name Clearing Hearing Based on Stigmatizing Statements For Her Fourth Claim for Relief**

Defendants argue that Plaintiff is not entitled to a name clearing hearing in her Fourth Claim for Relief for a constitutional violation of due process because Defendant Hathi's statements were not "stigmatizing." Their argument fails on a number of fronts, but it notably lacks any persuasive bite because the legal position Defendants set forth is inconsistent with the very case law they cite. *See*, Defs.' Mot. to Dismiss, at 9-13.

As a State employee, Plaintiff had a right to procedural due process when her public employer published[4] defamatory or stigmatizing statements in the course of terminating her employment. *Bd. of Regents v. Roth,* 408 U.S. 564, 573 & n. 12, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (recognizing that notice and hearing would have been required if "[t]he State, in declining to rehire the respondent, [made] any charge against him that might seriously damage his standing and associations in his community" or had damaged his "good name, reputation, honor, or integrity.").

First, Defendants overlook that Plaintiff alleges the statements by Defendant Hathi are defamatory to the extent they are false statements of fact published to third parties that caused

---

[4] Although Defendants do not directly argue Plaintiff's motion should be dismissed for failure to properly allege "publication" of the stigmatizing statements, they seem to allude to such an argument in footnote 6. Such an argument would be unavailing because the Ninth Circuit has already addressed this issue in *Cox v. Roskelley*, 359 F.3d 1105, 1112–13 (9th Cir. 2004). The Ninth Circuit acknowledged that the publication occurred through the public entity's response to a public records request and stated that "Defendants knew or should have known that there would be 'some public disclosure' of the charges contained in the termination letter of a public employee embroiled in a dispute of public interest." Similarly, here, Defendants knew of should have known there would be a public disclosure of the termination letter after firing a 14-year employee who was the Director of the Office of Equity and Inclusion with many strong ties to the Oregon diversity, equity, and inclusion communities.

harm to her reputation. Am. Compl. ¶¶ 48-53. Such allegations are sufficient in stating a liberty

interest. *See, e.g., Campanelli v. Bockrath*, 100 F.3d 1476, 1482 (9th Cir. 1996); *Olivieri v.*

*Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997) (stating "when the character and circumstances of

defamation [by an employer] . . . have foreclosed [an employee's] freedom to take advantage of

other employment opportunities, [the employee] can bring suit based on the deprivation of his

liberty of employment or occupation").

Second, Defendant Hathi's statements – combined with statements the OHA

"spokesperson" made to the press about civil rights investigations Plaintiff oversaw – implicate

her morality, truthfulness, and integrity so as to be sufficiently stigmatizing. The cases do not

require that the stigmatizing statements explicitly mention the words "morality" or "truthfulness"

or "lack of integrity." It is enough that  such concepts may be reasonably implied based on the

disparaging statements . *See, e.g., Cox v. N. Va. Transp. Comm'n*, 551 F.2d 555, 557–58 (4th

Cir.1976) (affirming trial court's determination that plaintiff's liberty interest was infringed

when employer publicly linked her discharge to investigation of financial irregularities, thus

"insinuating dishonesty"); *McNeill v. Butz*, 480 F.2d 314, 319–20 (4th Cir. 1973) (concluding

that federal employees' liberty interests were implicated by government-employer's charges of

Agriculture Department regulation violations that "smack of deliberate fraud" and "in effect

allege dishonesty").

In *Ridpath v. Bd. of Governors Marshall Univ*., 447 F.3d 292, 309 (4th Cir. 2006), the

public employer defendant told third parties only that an employee's reassignment was due to a

"corrective action." The plaintiff alleged that the label called into question his "honesty" and

"integrity" in a way that implicated a liberty interest. *Id.* The Fourth Circuit agreed with the

plaintiff, finding that it was a "question of fact, not properly assessed on a Rule 12(b)(6) motion," whether the statements insinuated a serious character defect. *Id.*

Here, there is similarly a question of fact as to whether Defendant Hathi's statements were so damaging as to constitute a label that would prevent Plaintiff from practicing in her chosen profession. However, even Defendants' own case citations contain underlying facts that support a conclusion that Defendant Hathi's statements meet the "stigmatizing" statement standard. For example, in *Campenelli v. Bockrath*, 100 F.3d 1476 (9th Cir. 1988), a college basketball coach was said to have "verbally and psychologically abused his players," which the Ninth Circuit found to constitute stigmatizing language. *See,* Defs' Mot. at 10. In this case, Defendant Hathi's termination letter states that Plaintiff:

    A.  "challenged" agency needs over her own personal interests,

    B.  caused an erosion of trust and confidence in the OHA office,

    C.  inappropriately delayed or closed important civil rights investigations,

    D.  undermined trust and morale on the agency leadership team,

    E.  impacted others' psychological "safety,"

    F.  displayed an "inability or unwillingness" to constructively receive feedback.

Am. Compl. ¶ 48. As such, the assertions in *Campenelli* - a case cited by Defendants – that the Ninth Circuit found sufficiently stigmatizing are nearly identical to Defendant Hathi's statements about Plaintiff, including the specific statements about Plaintiff's impact on others' "psychological safety." It follows that Plaintiff's allegations sufficiently state a claim of a stigmatizing statement.

Similarly, Defendants note that "accusation[s] that an employee has engaged in unlawful discrimination should be considered stigmatizing." Defs' Mot. at 11 (citing *Rush v. Perryman*, 579 F.3d 908 (8th Cir. 2009)). In this case, Defendant Hathi's termination letter includes allegations that Plaintiff caused "significant delays in investigating and closing OHA employees' civil rights complaints, ranging from sexual harassment to racial discrimination, filed with the division she leads - resulting in an erosion of trust and confidence in the office and division she leads - and impacting the agency's ability to respond to parties effectively and appropriately." Abrams Decl., Ex. A, at 1.[5] Defendant Hathi's statements are similar in spirit and nature to allegations that Plaintiff herself engaged in discrimination and are likely to have a similar impact on Plaintiff's future career prospects in her chosen field.

Furthermore, the Ninth Circuit recognizes as stigmatizing statements those that "impair[] [an individual's] a reputation for honesty or morality ." *Tibbetts v. Kulongoski*, 567 F.3d 529, 530 (9th Cir. 2018). In this case, Defendant Hathi's letter implies that Plaintiff's alleged mismanagement was intentional by stating that there was an "imbalance in how Ms. Johnson conducts herself within OHA" as opposed to how she conducts herself with "external partners" in her "outward facing work." Abrams Decl., Ex. A, at 1. These statements infer that Plaintiff knew how to conduct herself well but intentionally chose not to do so with her OHA colleagues. Defendant Hathi also asserts that Plaintiff "[c]hallenges valuing . . . [OHA's] needs and decisions over her personal . . . priorities" which directly implicates intentional defiance to serve a selfish motivation. *Id.* Accordingly, Defendant Hathi's statements put a stain on Plaintiff's

---

[5] Plaintiff has no concerns about incorporating the entire letter into her Complaint and seeks leave to amend to do so.

reputation for integrity and morality. Especially combined with the other accusations of allegedly delaying important civil rights investigations, these are certainly accusations that are likely, if not certain, to impair Plaintiff's "personal reputation for honesty" and "moral turpitude" and foreclose employment in Plaintiff's field.

In sum, Dr. Hathi's accusations go to the heart of Plaintiff's reputation for harming others as well as her honesty, integrity, and morality. Particularly considering the similarity of the stigmatizing statements in *Campenelli*, the Court should deny Defendant's motion to dismiss Plaintiff's Fourth Claim for Relief.

### e. Plaintiff Sufficiently Pled Facts Connecting the Individual Defendants' Conduct to Unlawful Employment Practices and Constitutional Violations For Her First, Second, Third, Fourth, Sixth, and Tenth Claims for Relief

Defendants ask the court to dismiss Plaintiff's First, Second, Third, Fourth, Sixth, and Tenth Claims for Relief by arguing "what the heck are [the individual defendants] alleged to have done?" Defs.' Mot. to Dismiss, at 13. The Amended Complaint answers that question.

- **Dr. Sejal Hathi (OHA Director):**

  o Showed immediate hostility toward employee feedback and complaints upon hiring in January 2024. Am. Compl. ¶ 23.
  o Became increasingly hostile toward Plaintiff after BOLI complaint notification. *Id.* ¶¶ 25, 26.
  o Treated Plaintiff more harshly than similarly-situated peers and responded defensively and hostilely when Plaintiff raised legitimate concerns. *Id.*
  o Told Plaintiff to choose her words "wisely" in ominous and threatening manner. *Id.* ¶ 33.
  o Made demeaning public comments about leadership team members. ¶ 34.
  o Increased retaliatory behaviors after Plaintiff's protected activity. *Id.* ¶ 28.
  o Summarily terminated Plaintiff's employment without notice, due process, or opportunity to be heard based on race and retaliation. *Id.* ¶¶ 44, 55-143.
  o Wrote a letter with stigmatizing statements about Plaintiff that were never presented to her and explicitly referenced Plaintiff's protected discrimination complaints in the termination letter. *Id.* ¶¶ 48-52.

- **Jennifer Midkiff (OHA HR Director)**

  o Received Defendant Hathi's letter alleging the reasons for Plaintiff's termination and referencing Plaintiff's open complaints, but chose to assist Defendant Hathi in terminating Plaintiff's employment anyway. *Id.* ¶ 48.
  o Followed Defendant Hathi's direction to process Plaintiff's termination.

  o Effectuated the change in Plaintiff's employment status from the management service to unclassified service without notice or an opportunity to be heard and directed the staff to "source" the approval letter to remove any management service protection Plaintiff had.

- **Jessica Knieling (DAS Director)**

  o Asked DAS administrator to place memorandum converting Plaintiff's position from "management service" to "unclassified service" on June 13, 2024, thereby participating in depriving Plaintiff of protectable property interest in her position for the purpose of terminating Plaintiff's employment. *Id.* ¶ 43.
  o Failed to provide notice regarding status change before deprivation. *Id.*

- **Berri Leslie (DAS Chief Operating Officer)**

  o Signed the memorandum on June 18, 2024 that converted Plaintiff's position status without proper notice or process and knew or had reason to know Plaintiff had due process rights before removing her protectible property interest in order to effectuate the termination of her employment *Id.* ¶ 43, 46.

- **Angela Sifuentez (OHA HR Manager)**

  o Played an active role in Plaintiff's termination meeting and terminating Plaintiff's employment without notice, due process, or opportunity to be heard on June 21, 2024, including taking the lead on telling Plaintiff that the termination meeting was "not [for] fact-finding" and the State would not be offering Plaintiff another position within the State. *Id.* ¶ 44.

/ / /

- **All Individual Defendants**

  o Knew or had reason to know Plaintiff had due process rights before removing her property interest in order to effectuate the termination of her employment and that

they could not take adverse actions against Plaintiff due to her race/color and/or
gender or any intersections thereof and had such knowledge when they personally
participated in taking adverse actions against Plaintiff. *Id.* ¶ 46.

The Amended Complaint demonstrates that the Individual Defendants were not passive

administrators, but rather actively participated in changing Plaintiff's employment status without

notice days before termination. Each defendant could have intervened, reported, or refused to

participate in the discrimination, retaliation, and due process violations.

Defendants' characterizations plainly misrepresent Plaintiff's robust allegations of both

direct and circumstantial evidence implicating the Individual Defendants. Plaintiff is not required

to prove her entire case at the pleading stage, and the Court must draw all reasonable inferences

in her favor. *Iqbal*, 556 U.S. at 678; *Jenkins*, 395 U.S. at 421; *Braden*, 588 F.3d at 595.

Moreover, Defendants wrongly attempt to apply an inappropriately heightened pleading

standard by requiring "smoking gun" evidence at the pleading stage. The powerful presumption

against rejecting pleadings is particularly strong in discrimination cases, where discovery is

"often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking an

allegedly discriminatory action." *Blanks v. Univ. of Oregon*, No. 6:17-CV-01578-AA, 2018 WL

4924546, at *4 (D. Or. Oct. 10, 2018) (denying motion to dismiss discrimination claim, even

where no party addressed the question of whether an inference of discrimination could be drawn

based on the adverse employment action). Plaintiffs are "not expected to plead with specificity

the defendant's state of mind. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).

It follows that discrimination claims frequently consist of a combination of allegations

that include both direct and circumstantial evidence, including Plaintiff's own inferences about

the Defendants' behaviors that are drawn from her own observations. Indeed, it is well-

established that a plaintiff can prove discrimination through overtly discriminatory comments as well inferences that a person was motivated by discriminatory animus. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1109 (9th Cir. 2004).

For example, proximity in time can by itself constitute sufficient evidence of retaliation. *See, e.g.*, *Schultz v. Wells Fargo Bank*, Nat. Ass'n, 970 F. Supp. 2d 1039, 1055 (D. Or. 2013) (up to seven-month period between an employee's protected activity and adverse action has been found to support a reasonable inference of causation). Plaintiff's Amended Complaint contains allegations sufficient for a jury to conclude that the close proximity in time between her protected activities and Defendants' adverse employment actions create a "presumptive retaliatory intent on the part of an employer." *Irvine v. Potter*, 2013 WL 1750473, at *6 (D. Or. 2013) (citations omitted). Additionally, Plaintiff can also establish causation "by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011). The Amended Complaint adequately alleges that Defendants had no legitimate justification to terminate Plaintiff, but instead to rests on a pretextual document manufactured for the express purpose of avoiding liability for an unlawful adverse employment action.

Defendants' argument regarding the alleged insufficiency of Plaintiff's beliefs, perceptions, and inferences as factual allegations is a red herring. First, courts "'relax pleading requirements where relevant facts are known only to the defendant,'" which is true in this case. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citing *Concha*, 62 F.3d at 1503. Second, allegations about perceptions and beliefs based on observations constitute circumstantial evidence that the Court and jury may consider, particularly since they are all related to factual

information otherwise alleged in the Complaint and especially for the purpose of hostile work environment claims where the Plaintiff's perception of the work environment is an element of the claim. For example, stating that Plaintiff "perceived Dr. Hathi's response to her as immediately defensive and hostile" is merely saying that Plaintiff directly observed Dr. Hathi's actions and drew conclusions about her state of mind therefrom. Similarly, it is entirely appropriate to allege "Dr. Hathi appeared to become tense" as circumstantial evidence that she was unhappy with protected activity.

Even taken in isolation, Plaintiff's allegations that each Individual Defendant played a part in the scheme is pled with particularity in the Amended Complaint. However, the entirety of the Amended Complaint would allow a factfinder to infer that Defendants' conduct, both individually and as a whole, was motivated by unlawful animus. There is no serious doubt that each of the individuals was well aware that discrimination and retaliation are unlawful employment practices. It is similarly easy to conclude that each individual also understood that Defendant Hathi directed them to effectuate Plaintiff's termination and that reclassifying her would eliminate an avenue to due process to contest the termination.

In sum, the Court should find Plaintiff's allegations sufficient to state a claim against the individual Defendants and should deny Defendants' motion to dismiss claims.

**f.   Defendants Leslie, Sifuentez, Midkiff, Knieling, and Hathi are Not Entitled to Qualified Immunity on Plaintiff's Third and Fourth Claims for Relief**

Defendants seek qualified immunity on Plaintiff's Third and Fourth Claims for Relief for Defendants Leslie, Sifuentez, Midkiff, Knieling, and Hathi by asserting that (a) their conduct was not clearly unconstitutional, and (b) the Amended Complaint lacks sufficient specificity

regarding each Individual Defendant's involvement. Defs.' Mot. to Dismiss, at 16-20. Both arguments fail because Plaintiff has alleged straightforward violations of well-established constitutional rights with sufficient specificity at the motion to dismiss stage.

1. _Plaintiff Sufficiently Alleges Acts in Violation of Clearly Established Constitutional Rights That No Reasonable Official Could Believe Was Lawful_

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." _Sweet v. Langley_, 798 F. App'x 135, 136 (9th Cir. 2020) (citing _City of Escondido v. Emmons_, 586 U.S. 38, 139 S. Ct. 500, 503, 202 L.Ed.2d 455 (2019)). While Defendant again attempts to hold Plaintiff to a heightened pleading standard at this early stage, a review of Plaintiff's Amended Complaint demonstrates she has sufficiently alleged clear constitutional violations: the right to be free from racial discrimination and retaliation for engaging in protected activities and the right to procedural due process violations.

Unlike cases requiring a more nuanced legal analysis, the constitutional violations here represent well-known violations that any reasonable official would understand are unlawful. First, Plaintiff's Amended Complaint thoroughly describes a pattern of disparate treatment that escalated following Plaintiff's protected complaints about racial discrimination. The right to be free from racial discrimination in employment as well as the right to be free from retaliation for reporting racial discrimination has been clearly established for decades. _See, e.g.,_ Title VII, ORS 659A.030, ORS 659A.199, 42 U.S.C. 1983, _McDonnell Douglas Corp. v. Green_, 411 U.S. 792 (1973). No reasonable official could believe that making employment decisions based on race or complaints of racial discrimination was constitutional.

Second, Plaintiff's Amended Complaint also describes her alleged procedural due process violations in detail. For example, Plaintiff describes her property interest in her management service position, which Defendants eliminated without notice by secretly finalizing the step to ensure her position was converted to "unclassified" to effectuate her termination days later.[6] Am. Compl. ¶¶ 42-43. The procedural due process requirements for depriving public employees of any property interest in their positions have been clearly established since *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

Plaintiff also describes violations of her liberty interests through stigmatizing statements about her character without providing her due process. *Id.* ¶¶ 48-52. In the Ninth Circuit, "a terminated employee *has* a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox*, 359 F.3d at 1110 (quoting *Roth*, 408 U.S. at 573)). This liberty interest in reputation, particularly when stigmatizing statements are made public, has been recognized since *Paul v. Davis*, 424 U.S. 693 (1976), and *Board of Regents v. Roth*, 408 U.S. 564 (1972).

In sum, no reasonable official could believe that secretly eliminating an employee's due process protections without notice days before terminating her or releasing stigmatizing information without providing a name-clearing hearing is constitutional. For these reasons, Defendants' motion to dismiss should be denied.

---

[6] It is also well-established that the State must meet all four elements of the principal assistant designation in ORS Chapter 240 in order for a manager to be properly "unclassified" without any due process rights. ORS 240.205(4); *Lopez v. Department of Human Services, Seniors and People with Disabilities*, Case No. MA-2-04, interim order on jurisdiction (July 2005), recons (September 2005), at 10-11. Indeed, that is what motivated Defendants to seek out the approval letter days before Plaintiff's termination.

2.   _Plaintiff Alleges Defendants' Relevant Conduct with Sufficient Specificity_

Defendants appear to recycle their arguments from Section IV of their motion by inaccurately arguing again that the Amended Complaint "is essentially devoid of any specifics that would be necessary to hold any of the individual defendants [liable] save perhaps for Defendant Hathi but are thin even as to her." Defs.' Mot. to Dismiss at 18. As argued in Section III.e. _supra_, Defendants' argument falls flat because Plaintiff has adequately alleged specificity about how Individual Defendants' actions violated clearly established rights.

As described in more detail in Section III.e. and incorporated herein:

- Defendant Hathi engaged in increasingly hostile behavior, discriminatory decisions, threats to Plaintiff, and made the ultimate decision to terminate her employment.
- Defendant Sifuentez actively participated in the termination meeting and implementation of discriminatory decisions.
- Defendants Leslie and Knieling actively participated in the scheme to strip plaintiff of due process protections by surreptitiously reclassifying her position in order to effectuate the termination.
- Defendant Midkiff[7] orchestrated the post-hoc documentation scheme to facilitate the unconstitutional termination.

/ / /

As such, Plaintiff sufficiently alleges that each Individual Defendant personally participated in the constitutional violations or directed others to do so. _Taylor v. List_, 880 F.2d 1040, 1045 (9th Cir. 1989); _see, also,_ Am. Compl. ¶ 60. Furthermore, the timing and sequence of events, the escalating retaliation following Plaintiff's protected complaints, culminating shortly thereafter in Plaintiff's termination demonstrates that Defendants' actions were not objectively reasonable

---

[7] Defendants again inaccurately downplay Defendant Midkiff's role by stating that "Ms. Midkiff is not mentioned in the Amended Complaint at all save for being identified and noting that she took steps to ensure plaintiff's personnel file paperwork was up to date. Am. Cp. ¶¶ 6, 42." See, Section III.e. _supra._

Page 25 of 42 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

mistakes or accidents of chance but were deliberate actions in violation of Plaintiff's constitutional rights. Plaintiff's Amended Complaint alleges that Defendants' stated reasons for termination were pretextual. These types of factual disputes regarding subjective intent cannot be resolved on a motion to dismiss.

Defendants cite *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 4, 142 S. Ct. 4, 7, 211 L. Ed. 2d 164 (2021), and *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 11, 142 S. Ct. 9, 11, 211 L. Ed. 2d 170 (2021), but both cases review qualified immunity at the summary judgment stage, not on a motion to dismiss. Again, Defendants' demand for greater specificity at the motion to dismiss stage improperly conflates pleading standards with summary judgment standards. Material facts regarding Defendants' coordination, intent, and knowledge remain within Defendants' exclusive control and require discovery.

Finally, as Defendants themselves highlight, their reliance on ORS 192.335 is misplaced. ORS 192.335 cannot provide immunity from federal constitutional claims under § 1983. Moreover, the statute only protects **good faith disclosures** and Plaintiff's allegations that Defendants released stigmatizing information as retaliation cannot constitute good faith.

For these reasons, the Court should deny Defendants' motion to dismiss Plaintiff's Third and Fourth Claims for Relief.

/ / /

/ / /

/ / /

/ / /

**IV.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO SUBSTITUTE THE STATE FOR INDIVIDUAL DEFENDANTS**

    **a.    Legal Standard for Motions to Substitute the State**

ORS 30.265 states that "[i]f an action is filed against an ... agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the [statutory cap], the court upon motion shall substitute the public body as the defendant."

    **b.    The State Should Not Be Substituted for the Individual Defendants in Claims Six And Ten**

Defendants invoke ORS 30.265 to request that Plaintiff substitute the State for the individual defendants on Plaintiff's Sixth and Tenth Claims for Relief. Defs.' Mot. to Dismiss, at 21-22. Here, Plaintiff does not allege a specific amount in damages so the substitution provision is inapplicable. *See, e.g., Gahr v. Marion Cnty*., No. 6:22-CV-01188-MTK, 2025 WL 835648, at *5 (D. Or. Mar. 17, 2025). Should Plaintiff be required to allege an amount of damages at this stage in the litigation in order to clarify the applicability of ORS 30.265, her request is equal to or exceeds $3,000,000.[8]

Plaintiff's Amended Complaint alleges facts that imply the Individual Defendants may have acted outside the course and scope of their duties. In any event, Plaintiff requests leave to amend to clarify that she alleges two alternative theories, one of which is that the Individual Defendants acted outside the course and scope of their duties.

/ / /

/ / /

---

[8] Should the Court determine it is necessary, Plaintiff seeks leave to amend to include the specific economic damages prayer.

V.    **THE COURT SHOULD DENY DEFENDANTS' MOTIONS TO STRIKE**

Defendants improperly move to strike Plaintiff's requests for prospective injunctive relief as well as background and context allegations in Paragraphs 13, 15-16, 20-21, and 27. Defs.' Mot to Dismiss, at 22. These motions should be dismissed based on waiver and a failure to meet the requirements of FRCP 12(f).

   a.  **Legal Standard for Motions to Strike**

"When considering a motion to strike, the court must view the pleadings in the light most favorable to the nonmoving party." *Scott v. PacifiCorp, No*. 1:22-CV-00174-AA, 2022 WL 2452281, at *1 (D. Or. July 6, 2022) (citing *Liberty Nat. Prods., Inc. v. Hoffman*, No. 3:13-CV-00886-BR, 2017 WL 4855404, at *5 (D. Or. Oct. 26, 2017), *dismissed*, No. 17-36033, 2018 WL 3090777 (9th Cir. May 22, 2018)). Motions to strike under FRCP 12(f) are generally "viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citations omitted); *see also Menchu v. Multnomah County Health Department*, 2021 W 2450780, at *3 (D.Or. May 3, 2021).

   b.  **Defendants' Motion to Strike Plaintiff's Requests for Prospective Injunctive Relief Should Be Denied.**

Defendants rather boldly assert that Plaintiff's Second Prayer for Relief, which requests "injunctive relief prohibiting further violation" and "[n]otice, a post-termination hearing, and a name-clearing hearing," should be stricken from her Amended Complaint. Defs.' Mot. at 20-21. Defendants' arguments should be dismissed because (i) Defendants waived their Eleventh Amendment immunity that might otherwise prohibit this Court from granting any retrospective relief, and (ii) Plaintiff's requests for injunctive relief are concrete, not hypothetical.

1. *Defendants Waived Their Eleventh Amendment Immunity Arguments As To Injunctive Relief*

Defendants' arguments to broadly strike Plaintiff's requests for injunctive relief and "[n]otice, a post-termination hearing, and a name-clearing hearing" based on Eleventh Amendment immunity have been unequivocally waived. Defendants assert that the "Eleventh Amendment prohibits federal courts from issuing declaratory and injunctive relief against state officials when no continuing violations exist." Defs.' Mot. at 20-21.

As described supra in Section III.b., Defendants confirmed agreement to a waiver of Eleventh Amendment immunity so that "all claims can be maintained in federal court." Guerriero Decl. ¶ 2, Ex. 1. Plaintiff's requests for injunctive relief – whether they seek relief for "ongoing violations" or not – apply to both her federal and state law claims. There is no basis to argue that Defendants' waiver of Eleventh Amendment immunity excluded certain types of relief such as injunctive relief that does not allege "ongoing harms."

As such, Defendants should be prohibited from making an end-run around their explicit waiver and the Court should deny Defendants' motion to strike.

2. *Plaintiff's Harms and Requested Injunctive Relief Are Concrete, Not Hypothetical*

Plaintiff alleges concrete harm that has occurred and will continue absent intervention by the Court. Defendants' threadbare support for its request to strike the prayer for injunctive relief is based only upon the vague proposition that her injury is a "hypothetical matter[] that may never come to pass." *Id.* at 21.

However, requests for reinstatement, injunctive relief prohibiting further violations, and "notice, a post-termination hearing, and a name-clearing hearing" are not only appropriate

Page 29 of 42 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

requests, but they are routine requests for harms of the nature alleged in the Amended

Complaint. *Id.* ¶¶ 47, 145. Other courts have allowed injunctive relief in employment cases in the

form of ceasing to discriminate or enjoining an employer to reinstate an employee under section

1983. *See, e.g., Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 840-41 (9th Cir. 1997).

In this case, the Amended Complaint provides sufficient allegations that Plaintiff is

suffering ongoing harm from the ongoing characterization and publicization of her termination

and that she seeks prospective relief for those harms and current and future threats. Plaintiff, for

her part, is quite certain that the harm she continues to suffer is not merely hypothetical. It is not

"hypothetical" that Plaintiff no longer has employment at OHA and that she no longer earns

wages, health benefits, or retirement contributions she once had. It is not "hypothetical" that

Plaintiff's name has been publicly smeared or that Defendants have and will continue to release

information to the public or potential employers upon request describing her termination as

involuntary for the stigmatizing reasons in Dr. Hathi's letter. It is not "hypothetical" that Dr.

Hathi blamed Plaintiff for OHA's delayed investigation in her termination letter and that the

media published statements inferring that OHA "spokespeople" took credit for improvements

since Plaintiff's termination. Am. Compl. ¶ 51.

Likely due to the way that OHA chose to handle the termination of Plaintiff's 14-year

employment and its communications to the public, Plaintiff has been unable to procure new

employment. *Id.* ¶ 53. This is true despite her years of experience, public accolades, and palpable

passion and even after repeatedly applying to positions for which she is qualified (and

overqualified) since Defendants executed their plan to terminate her. *Id.*

An order reinstating Plaintiff, prohibiting Defendants from asserting she was lawfully terminated, providing Plaintiff an opportunity for a name-clearing hearing, or prohibiting Defendants from further public statements of a similar nature are all remedies that carry the potential for redress.[9] So long as the allegations regarding Plaintiff exist unchecked and publicly available online, they will continue to damage her in perpetuity.

    **c.  Defendants' Motion to Strike  Background Context Should Be Denied.**

Defendants move to strike Paragraphs 13, 15-16, 20-21, and 27 as allegedly immaterial or impertinent under FRCP 12(f) because they believe that they "do not, as a matter of law, constitute 'adverse employment actions.'" Defs.' Mot. at 22-26. This motion should be denied because that allegations are (i) not prejudicial, and (ii) related to the adverse employment actions and are otherwise related to several other elements of plaintiff's claims unrelated to establishing an "adverse employment action."

    *1.  The Allegations at Issue Are Not "Prejudicial"*

Defendants do not allege that Paragraphs 13, 15-16, 20-21, and 27 are prejudicial, which is sufficient in and of itself to deny Defendants' motion to strike. A motion to strike background context should not be granted if it does not cause **prejudice**. *Thames v. City of Portland*, No. 3:16-CV-01634-PK, 2017 WL 4392044, at *5 (D. Or. Oct. 3, 2017) (citing *Snow v. Summers*, No. 10–6224–HO, 2011 WL 1545610, at *1 (D. Or. Apr. 21, 2011)). Furthermore, a motion to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of litigation …. If there is any doubt whether the portion to be stricken

---

[9] If the Court determines it is necessary, Plaintiff seeks leave to amend to clarify these specific requests for prospective injunctive relief more explicitly in the Amended Complaint.

Page 31 of 42 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

might bear on an issue in the litigation, the court should deny the motion." *Menchu* (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

In *Thames*, the plaintiff's complaint included allegations of "historical discrimination against African-Americans generally or against African-American venue-owners in particular." *See, Thames v. City of Porland*, No. 3:16-CV-1634-PK, 2017 WL 7312688, at *29 (D. Or. July 7, 2017), *report and recommendation adopted in part, rejected in part sub nom. Thames v. City of Portland*, No. 3:16-CV-01634-PK, 2017 WL 4392044 (D. Or. Oct. 3, 2017). The Court reasoned that the "rationale behind granting a motion to strike is to avoid prejudice" and found the defendants had not met their burden of demonstrating that the historical allegations caused them prejudice. *Thames*, No. 3:16-CV-01634-PK, 2017 WL 4392044, at *5 (citing *Snow v. Summers*, No. 10–6224–HO, 2011 WL 1545610, at *1 (D. Or. Apr. 21, 2011)). Similarly, here, absent any allegations of prejudice, the Court should deny Defendants' motion to strike.

### 2. *The Allegations at Issue Are Related to Several Elements of Plaintiff's Claims, Only One of Which Requires Establishing an "Adverse Employment Action"*

The portions of Plaintiff's Amended Complaint that Defendants wish to strike are not immaterial or impertinent. Rather, they are necessary to fully describing Plaintiff's complex relationships and experiences in the workplace, Plaintiff's longstanding work performance that Defendant Hathi ultimately attacks after Plaintiff files complaints against her, the full scale of the ongoing racial and retaliatory dynamics over Plaintiff's career with the State that play a part in her disparate impact and hostile work environment claims, her retaliation claims, her aiding or abetting claims, her constitutional claims, and context to rebut Defendant Hathi's allegations against her. As such, Paragraphs 13, 15-16, 20-21, and 27 of the Amended Complaint provide

Page 32 of 42 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

the full context and crucial background information for many elements of Plaintiff's various claims, including proving her claims that she was subject to adverse employment actions.

Defendants' argument strangely narrows the entire focus of its briefing on only one element of Plaintiff's many legal claims: proving an "adverse employment action." In their entire motion, Defendants do not provide any other basis for striking the allegations beyond claiming that the alleged discrimination and retaliation do not constitute "adverse employment actions." Defs.' Mot. to Dismiss, at 22-26. While it is true that an "adverse employment action" is **one** of the elements of Plaintiff's retaliation and disparate treatment discrimination claims, it is not the only element relevant to her case. For example, whether Plaintiff was qualified for her position, what facts establish "causation" between the adverse employment action and the protected class or protected activity, and whether Plaintiff can rebut Defendant's reasons for her termination as pretext are highly relevant to proving her disparate impact discrimination claims. *See, e.g.,* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2017 Edition (Last Update March 2025), 10.1 through 10.11; *McDonnell Douglas Corp.*, 411 U.S. 792. As such, Plaintiff is not required to ***only*** allege facts that establish "adverse employment actions."

Furthermore, the challenged paragraphs are relevant to Plaintiff's other claims that do not require adverse employment actions, including constitutional violations of equal protection and due process, hostile work environment claims, and aiding or abetting claims. For example, Plaintiff must contest the accuracy of allegedly stigmatizing statements for her liberty interest due process claims. *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).

Despite Plaintiff's 14 years of employment without documented performance concerns of this nature, Defendant Hathi now relies upon unidentified individuals' undated accounts to

support her decision to terminate Plaintiff. Defendant Hathi's accusations lack specificity as to any examples, complainants, or timeframes, which makes the background context essential to rebutting their accuracy. Defendant Hathi accuses Plaintiff challenging agency needs over personal interests, eroding trust and confidence, delaying or improperly closing civil rights investigations, undermining team morale, impacting others' "psychological safety," and resisting feedback. In turn, Paragraphs 13, 15-16, 20-21, and 27 provide necessary context related to Plaintiff's actual scope of responsibility over civil rights investigations and authority over staffing. The paragraphs also provide crucial information about the complex relationships between Plaintiff and the employees in Human Resources or the Department of Administrative Services ("DAS") that go back to the start of her employment and are relevant to Defendant Hathi's accusations of an "erosion" of trust, confidence, or morale. As a result, these paragraphs are necessary in many ways, including to demonstrate that these sudden, unsubstantiated allegations constitute pretext for retaliation, that Plaintiff is qualified for her position, and that Plaintiff was subjected to an ongoing hostile work environment.

Finally, Defendants also incorrectly indicate that "other employees' employment complaints, claims, or cases against OHA" could not possibly be relevant to Plaintiff's discrimination claims. To the contrary, it is well-established that statements and conduct need not be specifically targeted towards Plaintiff to be relevant to Plaintiff's hostile work environment claims. *See, e.g., Goldsby v. Safeway Inc.,* No. 3:16-CV-02056-HZ, 2018 WL 297583, at *7 (D. Or. Jan. 4, 2018) (citing *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998)) ("The harassing comments need not be directed at Plaintiff in order to create a hostile work environment."); *Johnson v. Riverside Healthcare System, LP,* 534 F.3d

1116, 1123 (9th Cir. 2008) ("[D]iscriminatory conduct directed at an individual other than the plaintiff may be relevant to a hostile work environment claim."); *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 688 (9th Cir. 2017) (including comments about people from various racial backgrounds and national origins in determining whether there was a hostile work environment for a person from Mexico); *Woods v. Graphic Communications,* 925 F.2d 1195, 1197–98 (9th Cir. 1991) (same).

## VI.   REQUEST FOR LEAVE TO FILE SECOND AMENDED COMPLAINT IF NECESSARY

Leave to amend shall be freely given when justice so requires. FRCP 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962); *United States v. Hougham*, 364 U.S. 310, 81 S. Ct. 13, 5 L. Ed.2d 8 (1960). The policy of favoring amendments should be applied with "extreme liberality." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

Should this Court agree with any of Defendants' arguments or require additional detail or amendments, Plaintiff seeks leave to file a Second Amended Complaint to further clarify any allegations as well as their interplay with the specific claims for relief, including attaching Dr. Hathi's letter as an exhibit and specifically alleging a prayer for a specific amount of economic damages on Plaintiff's state law claims and/or for orders reinstating Plaintiff, prohibiting Defendants from asserting she was lawfully terminated, providing Plaintiff an opportunity for a name-clearing hearing, or prohibiting Defendants from further public statements of a similar nature to those alleged in the complaint.

/ / /

/ / /

## VII.    CONCLUSION

For the reasons stated above, Defendants' Motions should be denied in their entirety. In the alternative, Plaintiff should be granted leave to file a Second Amended Complaint.

Dated: June 30, 2025.                          BEACON EMPLOYMENT LAW

 s/Talia Y. Guerriero
Talia Y. Guerriero, OSB #115271
talia@beaconforjustice.com
David C. Higgs, OSB #114193
david@beaconforjustice.com
Of Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains (9,263) words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.