**Talia Y. Guerriero**, OSB #115271
talia@beaconforjustice.com
**David C. Higgs**, OSB #114193
david@beaconforjustice.com
Beacon Employment Law
1000 SW Broadway, Suite 2130
Portland, OR 97205
503-673-1388 (Phone)
503-564-4689 (Fax)
Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **LEANN JOHNSON**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF OREGON,** by and through the **OREGON HEALTH AUTHORITY**; and **SEJAL HATHI**, in her individual and official capacities; **BERRI LESLIE**, in her individual and official capacities; **JENNIFER MIDKIFF**, in her individual and official capacities**; ANGELA SIFUENTEZ**, in her individual and official capacities; and **JESSICA KNIELING**, in her individual and official capacities;<br><br>Defendants. | Case No. 6:25-cv-00470-AA<br><br>**DECLARATION OF TALIA Y. GUERRIERO IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE SUR-REPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE AND IN SUPPORT OF PLAINTIFF'S SUR-REPLY** |

I, Talia Y. Guerriero, declare and testify as follows:

1.      I am one of the attorneys of record for Plaintiff in the above-captioned matter. I make this declaration in support of Plaintiff's Unopposed Motion for Leave to File a Sur-Reply to Defendant's Partial Motion to Dismiss and To Substitute and Strike.

2.      On July 10, 2025, Defendant filed a Reply brief that raised new arguments and cited authorities not previously addressed in its original Motion to Dismiss and that contains material mischaracterizations requiring correction, particularly in light of the ERB decision they cite. Plaintiff has not had an opportunity to respond to the new matters, which bear directly on the issues before the Court and may affect the outcome of the pending motion.

3.      ERB Administrative Law Judge Carlton Grew held a hearing on December 6, 2024 and February 27, 2025 on the following questions: "Does the Board have jurisdiction over Appellant's claims that the Oregon Health Authority violated ORS 240.560(3) and (4); OAR 115-045-0010; and ORS 240.570(2), (3), and (4) when it (a) reassigned or removed Appellant from management service on June 18, 2024, and/or (b) when it terminated Appellant's employment?" Attached hereto as **Exhibit 1** is a true and correct copy of the Employment Relations Board decision on these legal questions adopted today, July 23, 2025. The original Recommended Order was issued June 25, 2025 and the 14-day objection period expired July 10, 2025.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff's Amended Appeal.

5.      The proposed sur-reply is tailored to address only the new arguments and

Page 2 of 3 – DECLARATION OF TALIA Y. GUERRIERO IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE SUR-REPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE AND IN SUPPORT OF PLAINTIFF'S SUR-REPLY

authorities raised in Defendant's Reply and, in discrete instances, to provide a correction of a mischaracterization of facts or law, which serves the best interests of the Court. It is submitted in good faith to assist the Court in its consideration of the motion.

6.    Attached hereto as **Exhibit 3** is a true and correct copy of Plaintiff's proposed Sur-Reply.

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

Dated: July 23, 2025.                    BEACON EMPLOYMENT LAW

                                                          s/Talia Y. Guerriero
                                                         Talia Y. Guerriero, OSB #115271
                                                         talia@beaconforjustice.com
                                                         David C. Higgs, OSB #114193
                                                         david@beaconforjustice.com
                                                         Of Attorneys for Plaintiff

EMPLOYMENT RELATIONS BOARD

OF THE

STATE OF OREGON

Case No. MA-008-24

(MANAGEMENT SERVICE RECLASSIFICATION/TERMINATION)

| | | |
|---|---|---|
| LJ, | ) | |
| | ) | |
| Appellant, | ) | RULINGS, |
| | ) | FINDINGS OF FACT, |
| v. | ) | CONCLUSIONS OF LAW, |
| | ) | AND ORDER |
| STATE OF OREGON, OREGON | ) | |
| HEALTH AUTHORITY, | ) | |
| Respondent. | ) | |

Talia Guerriero, Attorney at Law, Beacon Employment Law, Portland, Oregon, represented Appellant LJ.

Tessa M. Sugahara, Attorney-in-Charge, Labor and Employment Section, Oregon Department of Justice, Salem, Oregon, represented Respondent.

_____

On June 25, 2025, Administrative Law Judge B. Carlton Grew issued a recommended order in this matter. The parties had 14 days from the date of service of the order to file objections. OAR 115-010-0090(1). No objections were filed, which means that the Board adopts the attached recommended order as the final order in the matter. OAR 115-010-0090(4). OAR 115-010-0090(5) allows the Board to limit the precedential value of the final order in these circumstances, and the Board does so in this case. Accordingly, this order is binding on, and has precedential value for, only the named parties in this case.

ORDER

The appeal is dismissed.

DATED: July 23, 2025.

_____
Adam L. Rhynard, Chair

_____
Shirin Khosravi, Member

_____
Benjamin O'Glasser, Member

This Order may be appealed pursuant to ORS 183.482.

Exhibit 1
Page 1 of 12

EMPLOYMENT RELATIONS BOARD

OF THE

STATE OF OREGON

Case No. MA-008-24

(MANAGEMENT SERVICE RECLASSIFICATION/TERMINATION)

| | | |
|---|---|---|
| LJ, | ) | |
| | ) | |
| Appellant, | ) | RECOMMENDED RULINGS, |
| | ) | FINDINGS OF FACT, |
| v. | ) | CONCLUSIONS OF LAW, |
| | ) | AND PROPOSED ORDER |
| STATE OF OREGON, OREGON | ) | |
| HEALTH AUTHORITY, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

A hearing was held before Administrative Law Judge (ALJ) B. Carlton Grew on December 6 and February 27, 2025. The record closed on April 2, 2025, following submission of the parties' post-hearing briefs.

Talia Guerriero, Attorney at Law, Beacon Employment Law, Portland, Oregon, represented Appellant LJ.

Tessa M. Sugahara, Attorney-in-Charge, Oregon Department of Justice, Salem, Oregon, represented Respondent.

_____

On June 21, 2024, the director of the Oregon Health Administration (OHA), Dr. Sejal Hathi, removed LJ from her position of Equity and Inclusion Director/Diversity, Equity, and Inclusion Administrator 2. LJ filed a timely appeal on July 19, 2024, alleging that the removal violated ORS 240.560, ORS 240.570(3), and OAR 115-045-0010 because OHA did not establish that Appellant was unable or unwilling to fully and faithfully perform the duties of the position satisfactorily. On October 23, 2024, LJ filed an amended appeal alleging that OHA had violated additional subsections of ORS 240.560 and ORS 240.570 by assigning, reassigning, removing, and/or transferring LJ to the unclassified service on June 13, 2024, after the decision was made to terminate her. On October 11, 2024, the ALJ bifurcated the hearing to first hear and decide the issue of jurisdiction.

2

Exhibit 1
Page 2 of 12

The issue for the first part of the bifurcated hearing is:

Does this Board have jurisdiction over Appellant's claims that OHA terminated Appellant's employment in violation of ORS 240.560(3) and (4); OAR 115-045-110010; and ORS 240.570(2), (3), (4)?

As discussed below, we conclude that, at the time OHA issued its termination notice, LJ was a member of unclassified/executive service, and that this Board has no jurisdiction over Appellant's claims. Accordingly, we dismiss the appeal.

<u>RULINGS</u>

1.      OHA raises timeliness objections to claims under ORS 240.570(2) and (4) that were added in Appellant's amended Appeal, well after the end of the 240.560 statutory time limitation for filing an appeal of the termination. Therefore, the issue is whether the allegations of the amended appeal "relate back" to the original appeal. This Board follows the standard for determining whether an amendment relates back set by Oregon Rule of Civil Procedure (ORCP) 23C: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." *Melendy v. Service Employees International Union Local 503, Oregon Public Employees Union and State of Oregon, Department of Human Services, Oregon State Hospital*, Case No. FR-3-08, 22 PECBR 975 (2009); *Tancredi v. Jackson County Sheriff's Employee Association and Jackson County Sheriff's Office*, Case No. UP-31-04 at 8, 20 PECBR 967, 974 (2005); *Martin v. Ashland School District # 5; Morris, OSEA, Barbara Fields, Helman Elementary*, Case No. UP-30-01, 20 PECBR 164 (2003).

We determine that the relevant allegations in the amended Appeal arose out of the same conduct, transaction, or occurrence as the original Appeal letter, and therefore are not barred from consideration under our statute of limitations.

2.      At hearing, the parties submitted the following exhibits, which were received without objection: For OHA, Exhibits R-1 through R-7, R-9 through R-14, and R-16 through R-20; for LJ, Exhibits A-1 through A-21.

3.      The remaining rulings of the ALJ have been reviewed and are correct.

<u>FINDINGS OF FACT</u>

1.      OHA is a large department of the State of Oregon and is responsible for Oregon's health care programs. OHA's chief executive, appointed by the Governor in January 2024, is Director Dr. Sejal Hathi.  Beneath Director Hathi are two Deputy Directors, Dave Baden and Kris Kautz, two other individuals without staff, and eight directors of various agency components including Fiscal and Operations, Behavior Health Division, Medicaid Division, Public Health

3

Exhibit 1
Page 3 of 12

Division, and the Equity and Inclusion (E&I) Division.[1] These individuals are part of the OHA Director's executive team.

2.      There are two broad categories of state employment relevant to this Appeal. One category is management service; positions in that category are permitted appeals to this agency in the event of discipline and termination, among other subjects. The other category is executive/unclassified service, who serve at-will at the pleasure of agency directors.[2] A subset of executive/unclassified service are those positions designated as principal assistants. Properly appointed principal assistants serve at-will at the pleasure of agency directors.

3.      ORS 240.205(4) provides[3] that a position can be a principal assistant, and thus within executive/unclassified service, only if the following conditions are met: the employee (1) is a manager of a major agency organizational component, (2) reports directly to a statutorily listed officer or a deputy,  (3) is designated a principal assistant by such that officer or deputy, and (4) has that designation formally approved by the Director of the Oregon Department of Administrative Services (Director).

4.      DAS has several policies relevant to executive/unclassified service: State Policy 30.000.01, Effect of Position Classification Change on Incumbents; State Policy No: 40.035.01, Unclassified Service Employment, Investigation and Termination; and State HR Policy 10.000.01, Definitions.[4]

LJ Hired, 2015

5.      In 2015, then OHA Director Lynne Saxton offered LJ a position then called "Office of Equity and Inclusion Director." (Exh. A-2.) Saxton's offer letter stated, "This is an executive service appointment and you serve at the pleasure of the Oregon Health Authority (OHA) Director and will be reporting directly to me." (Exh. A-2.) However, Saxton did not

---

[1]As described below, the title of this division, and the administrative classifications of its director, has evolved over time. The functions of this division director have not changed in any way material to this Appeal over the course of LJ's employment, and we will use the abbreviations E&I Division and E&I Director throughout this Recommended Order.

[2]ORS 240.195(2) and ORS 240.205 use the term "unclassified service." However, DAS uses the term "executive service" in its personnel policies and documents, which it defines as the equivalent of statutory unclassified service. State HR Policy 10.000.01(124). OHA follows DAS practice. Both terms appear repeatedly in the record. For clarity and precision, we will use the terms "executive/unclassified service."

[3]This recitation of the statute is provided to aid the reader.

[4]We take judicial notice of State HR Policy 10.000.01, effective January 1, 2024, and it is quoted at length below. *See Oregon AFSCME Council 75 v. Douglas County*, Case No. CC-004-14 (February 2015), citing *SAIF v. Calder*, 157 Or App 224, 227, 969 P2d 1050 (1998) (an administrative agency may take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned). We do not take such notice of State Policy 30.000.01 and State Policy No: 40.035.01, as they have been modified after the events at issue here.

4

Exhibit 1
Page 4 of 12

designate the position as a principal assistant and did not have that designation formally approved by the Director of the state Department of Administrative Services (DAS). LJ accepted the offer and worked in that position until her June 2024 termination.

6.    For salary and other employee administrative purposes, LJ's position was designated as a Principal Executive Manager G ("PEM G").

7.    All of the job descriptions for LJ's E&I Director position, created at various times throughout her employment, included six checkable boxes in the upper right-hand corner of the first page below the words "This position is:". The boxes were labeled, from the top down, Classified, Unclassified, and Executive Service. The next three boxes were labeled Mgmt. Svc - Supervisory, Mgmt. Svc - Managerial, and Mgmt. Svc - Confidential. (Exh. A-3.) All iterations of this job description until LJ's termination checked the executive service box only.

8.    At the time of hearing, LJ's E&I Division had a $22 million budget. It included approximately 85 positions under four direct reports each heading one of four program units. LJ's position descriptions state that the E&I Director leverages resources, initiatives, and ideas to maintain or expand existing programs and develops new tactics and strategies consistent with current and emerging practice to address health inequities in Oregon. The work of the E&I Director includes implementing various federal mandates connected to the equitable delivery of health care in Oregon.

9.    Throughout her employment, LJ had the authority to formulate and carry out management decisions; to exercise independent judgment to make recommendations as well as decisions about hiring, transferring, suspending, laying off, recalling, promoting, discharging, assigning, rewarding and disciplining other employees; to address employee complaints; and to direct employee's work. LJ exercised discretion in implementing OHA's policies. Throughout LJ's employment, the Department has treated the E&I Director position as an executive level position, with the E&I Division identified as a major organizational unit reporting directly to the OHA director. For her part, during her employment at OHA, LJ never sought to change the designation of the position as an executive-level position and never disputed that she served at the pleasure of the OHA Director.

<u>2021 Reclassification from PEM-G to a PEM-H</u>

10.    In 2021, the OHA Director was Patrick Allen; the Deputy Director was Kris Kautz. In 2021, Kautz sought to reclassify LJ's position from a PEM-G to a PEM-H. That reclassification was unrelated to LJ's status of management service or executive/unclassified service. At the time of the 2021 reclassification, Deputy Director Kautz believed LJ's position was already included in the executive/unclassified service, and accordingly believed that no action needed to be taken to designate LJ as a Principal Assistant. However, Kautz was unaware of any documents stating that LJ's E&I position had been designated as a Principal Assistant with the approval of DAS.

Exhibit 1
Page 5 of 12

11.     The 2021 reclassification did not change LJ's role on the OHA executive team or E&I Division and did not change LJ's status of management service or executive/unclassified service. Similar to the 2015 job description, the relevant 2021 job description does not check the box marked "unclassified."

12.     OHA Class and Compensation Analyst Brett Marconeri and OHA Senior Human Resources ("HR") Manager Minnie McCloud-Walker were also involved in the 2021 reclassification of LJ's position. Marconeri wrote the 2021 Classification Analysis Recommendation Memorandum. Neither McCloud-Walker nor Marconeri determined whether there was an agency head designation or DAS director approval designating LJ's position as a principal assistant. OHA Director Allen never requested that LJ's position be designated as a Principal Assistant and was not involved with the 2021 reclassification.

<u>E&I Director Classifications and Position Descriptions</u>

13.     During 2022, DAS went through a major reclassification process that resulted in eliminating the use of "PEM" titles for positions, including at OHA. As part of that reclassification process, LJ was given a revised position title, "Equity & Inclusion Director / Diversity, Equity, and Inclusion Administrator 2." (Exh. A-6 at 1-2.) During this process, neither DAS nor OHA took any action regarding a designation of LJ as a Principal Assistant.

14.     LJ worked on, edited, and updated her position description several times during her employment. OHA executives, including Deputy Director of Administration Kautz and appointing authorities in HR, asked for LJ's input on revisions to the position description.

15.     Throughout her employment, LJ was aware that her position descriptions' "Executive Service" box was checked. She was also aware that her position had other attributes of executive/unclassified service, including her leadership over the major organizational component E&I Division and her direct reporting relationship to the agency director.

16.     LJ shared her E&I Director position description with other State agencies in response to their requests for information about OHA's E&I structure and work. The other agencies were investigating the creation of their own equity and inclusion divisions.

17.     In March 2022, Department of Corrections employees specifically requested PEM E, F, or G language regarding the OHA E&I Division. LJ responded with her own position description, with the box checked for executive service and the then classification of PEM H. LJ also included position descriptions for her five subordinate managers, all of whom had the box checked for "Management Service – Supervisory" and identified classifications of PEM E, F, or G. LJ did not comment on the accuracy of any of the position descriptions she supplied.

18.     The state uses Workday as the statewide electronic human resources management system, used by all state employees. Individual employees have individual profiles in Workday. Employees use Workday for leave requests, payroll functions, performance feedback, and information about the attributes of their position. LJ's Workday profile identified her position as

**Exhibit 1**
**Page 6 of 12**

"Executive Service-Supervisory" with a representation (REPR) code of "MESN." The code MESN identifies executive service positions. Management Service positions are coded "MMN."

<u>LJ June 2024 Termination</u>

19.    In mid-June 2024, OHA Director Hathi decided to terminate LJ's employment with OHA and directed Department HR staff to prepare the required documents.

20.    A day or two afterward, OHA HR Director Midkiff discovered that the documents in LJ's personnel file did not meet the requirements under ORS 240.205(4) for classification as principal assistant. Midkiff asked her staff to "source" an approval letter from DAS to cure the problem. HR officials Midkiff, McCloud-Walker, Anna Chamberland, and Marconeri exchanged several high priority emails and urgent chat messages in this effort. Many of these were requests for phone calls and meetings. None of these communications identified LJ by name, but the reason for the communications was to address the unmet requirements under ORS 240.205(4).

21.    The discovery of LJ's non-perfected executive/unclassified status prompted OHA HR staff to review the status of other similarly situated OHA employees, finding eight of them for whom, like LJ, OHA had not completed of all the statutory requirements. Two of those employees were members of the OHA executive team. OHA officials immediately took steps to bring those positions into statutory compliance, but they processed LJ's position first.

22.    On June 18, 2024, in response to the issue identified by Midkiff, DAS Director Berri Leslie signed a memorandum designating "the Director for Office of Equity & Inclusion" as a "principal assistant under ORS 240.205(4)." DAS Director Leslie's designation of principal assistant under ORS 240.205(4) was based on her determination that LJ's position reported to OHA's director and that LJ's position exercised full operating authority over a major organizational unit, namely the E&I Division.

23.    On June 21, 2024, after receiving the June 18 designation of LJ's position as a "principal assistant" from the DAS director Leslie, OHA Director Hathi issued a letter removing LJ from her position effective that date. The removal letter stated, in part:

"You are employed with the Oregon Health Authority in the position of Equity & Inclusion Director / Diversity, Equity, and Inclusion Administrator 2, in unclassified (executive) service. Under relevant law and policy, unclassified (executive) service positions serve "at will" and the director exercises discretion when determining whether to end an appointment per DAS Policy 40.035.01.

"I am exercising my authority to end your executive service appointment on June 21, 2024. In making this decision, although it is not necessary to list any specific grounds, I considered factors that include the transition to a new agency director, my strategic goals, and the organizational health of this agency."

(Exh. R-19.)

**Exhibit 1**
**Page 7 of 12**

24.     On July 19, 2024, LJ filed this Appeal.

CONCLUSIONS OF LAW

In this first phase of the bifurcated hearing, LJ argues that OHA did not properly remove her from an executive/unclassified service position because she was not, in fact, a member of executive/unclassified service, but was a member of management service subject to the standards and appeal process contained in ORS 240.570(3).

We conclude that the Department has met its burden to establish that, at the time of LJ's termination, she was designated as a principal assistant and a member of executive/unclassified service and that, therefore, this Board lacks jurisdiction over her appeal.

We turn to our analysis.

1.     This Board lacks jurisdiction over the parties and the subject matter of this dispute.

Categories of State Service: Statutes, Rules and Policies Defining Executive/Classified Service

Statutes

ORS 240.195 divides all of state service into four categories: classified service, unclassified service, exempt service, and management service. The requirements for principal assistant in unclassified service are set out in ORS 240.205(4), which provides:

"The unclassified service shall comprise: * * * *

"(4) Principal assistants and deputies and one private secretary for each executive or administrative officer * * *. "Deputy" means the deputy or deputies to an executive or administrative officer listed in subsections (1) to (3) of this section who is authorized to exercise that officer's authority upon absence of the officer. "Principal assistant" means [1] a manager of a major agency organizational component [2] who reports directly to an executive or administrative officer listed in subsections (1) to (3) of this section * * * and [3] who is designated as such by that executive or administrative officer [4] with the approval of the Director of the Oregon Department of Administrative Services."

ORS 240.240(1) states:

"The unclassified service or, except as provided in ORS 240.250 (Rules applicable to management service), the management service shall not be subject to this chapter, except that employees and officers in the unclassified or management service shall be subject to the laws, rules and policies pertaining to any type of leave with pay [and] to salary plans * * *."

8

Exhibit 1
Page 8 of 12

State HR Policies

State HR Policy 10.000.01 "defines terms used throughout policies maintained by the Chief Human Resources Office." Definition (124) equates "executive service" with unclassified service: "Unclassified "Executive" service: as defined in ORS 240.205." By this policy, and by custom, the term "executive service" is often used in place of the term "unclassified service."

Statutory Appeal Rights

ORS 240.560(1) states that a "regular employee who is reduced, dismissed, suspended or demoted, shall have the right to appeal to the Employment Relations Board * * *." ORS 240.015 defines "regular employee" as "an employee who has been appointed to a position in the classified service in accordance with this chapter after completing the trial service period." 240.570(3) provides a similar right of appeal to disciplinary actions imposed on management service employees: "A management service employee is subject to a trial service period * * *. Thereafter, the management service employee may be disciplined by reprimand, salary reduction, suspension or demotion or may be removed or dismissed from the management service if the employee is unable or unwilling to fully and faithfully perform the duties of the position satisfactorily."

ORS 240.570(2) provides, "[a]n appointing authority may assign, reassign and transfer management service employees for the good of the service and may remove employees from the management service due to reorganization or lack of work."

The effect of these statutes is that this Board does not have jurisdiction to hear appeals under ORS 240.570(3) made by employees in the executive/unclassified service. *Lopez v. State of Oregon, Department of Human Services, Seniors and People with Disabilities*, Case No. MA-2-04 (July 2005); *Hanf v. Office of State Fire Marshall*, Case No. MA-21-96 (November 1996); *Hunt v. Department of State Police*, Case No. MA-4-89 (June 1989).

Application to the Facts of this Case

LJ contends that she was a management service employee who was terminated in violation of ORS 240.570(3) and that, therefore, this Board has jurisdiction over her appeal. OHA contends that LJ was a designated personal assistant in executive/unclassified service at the time of her termination, and, therefore, this Board lacks jurisdiction over her appeal. Accordingly, the central issue in this bifurcated portion of the appeal is whether LJ's position was in management service or executive/unclassified service at the time of her termination.

We determine, and the parties effectively agree, that LJ's status as a member of executive/unclassified service did not meet the statutory requirements for that service from her July 2015 hiring until at least the June 18, 2024, letter from DAS Director Leslie formally designating LJ's position as a personal assistant in executive/unclassified service. The parties dispute whether the June 18 designation was effective in light of the fact that it came after OHA Director Hathi had decided to terminate LJ and directed OHA staff to prepare the relevant paperwork. The parties also dispute whether OHA failed to meet one additional statutory

**Exhibit 1**
**Page 9 of 12**

requirement for executive/unclassified service, the designation that LJ headed a major organizational component.

This Board has held that all four requirements of ORS 240.205(4) must be met to effectively designate an employee to be in executive/unclassified service. *Lopez,* Case No. MA-2-04. However, neither the relevant statutes nor Board precedent provide guidance about when, or in what order, that designation must be made. From the statutory perspective, it appears that all that matters is that, at the time of the decision appealed from, the State entity has satisfied the requirements of ORS 240.205(4).

LJ emphasizes that OHA Director Hathi's early June 2024 *decision* to terminate LJ was made while LJ was in management service, but actually *issued the termination notic*e after LJ became a member of executive/unclassified service. However, LJ does not argue that she could have appealed Hathi's *decision* to terminate LJ prior to the issuance of the June 21 *termination notice*. LJ points to nothing in the language of the relevant statutes that would determine this Board's jurisdiction based on any factor other than the employee's status at the time of actual termination.

LJ argues that her designation as a member of executive/unclassified service violated principles of contract law because LJ was never given notice of, or offered, and no opportunity to accept or reject, employment under that designation, until she was terminated. However, this Board and the Court of Appeals have held that contract law is generally inapplicable to SPRL cases. *See Personnel Division v. St. Clair*, 10 Or App 106, 498 P2d 809 (1972) ("civil service rights of public employes granted by law are neither contractual nor vested, and, because that is true, not only such rights, but the remedies for the enforcement thereof may be abolished by the authority that created them."); *Martinez v. Fairview Training Center*, Case No. 1414/unclassified service (December 1982), AWOP 64 Or App 424 (1983), *rev den* 296 Or 56 (1983) (relying in part on *St. Clair* and ORS 240.240 in holding that this Board has no jurisdiction to review personnel actions taken regarding unclassified employees).

Even if offer and acceptance principles were applicable here, LJ was offered, and accepted the E&I position which was explicitly described as serving at the pleasure of the OHA Director, that is, at will.

LJ argues that even if the requirement of approval by the DAS Director has been complied with, the third requirement of the test has not. The third requirement is the "who is designated as such by that executive or administrative officer" language. ORS 240.205(4). As this Board noted in *Lopez*, the phrase "who is designated as such" is ambiguous, because it has an indefinite reference. The phrase could refer to a designation of the relevant executive or administrative officer, or designation of the principal assistant.

LJ argues that the appropriate designation is that of the relevant executive of the relevant employee, here, OHA Director Hathi, which, LJ argues, never took place. However, even if LJ's statutory construction were correct, we conclude that the OHA Director did approve LJ's executive/unclassified service designation. In LJ's letter of termination, the OHA Director stated,

**Exhibit 1**
**Page 10 of 12**

"You are employed with the Oregon Health Authority in the position of Equity & Inclusion Director / Diversity, Equity, and Inclusion Administrator 2, in unclassified (executive) service. Under relevant law and policy, unclassified (executive) service positions serve "at will" and the director exercises discretion when determining whether to end an appointment per DAS Policy 40.035.01."

Finding of Fact 23.

While the OHA Director's letter did not use the term "principal assistant" as the DAS Director's did (designating "the Director for Office of Equity & Inclusion" as a "principal assistant under ORS 240.205(4)"), and the policy it refers to (40.035.01) does not use the term "principal assistant," we conclude that, with the issuance of LJ's termination letter on June 21, 2024, OHA had satisfied the ORS 240.205(4) requirements to designate LJ's position as a "principal assistant."

LJ argues that if LJ was not an executive/unclassified employee as of June 17, 2024, the June 18 memorandum finding that LJ was a member of executive/unclassified service "establishes [this Board's] jurisdiction to make substantive determinations regarding whether the State violated ORS Chapter 240 by assigning, reassigning, removing, and/or transferring her from management service to unclassified service by way of the June 18, 2024 memorandum." However, as OHA notes, all of this Board's reassignment cases involve management service employees who were reassigned from one physical location to another while retaining their existing management service designations. *See Keller v. Dept. of Transportation*, Case No. MA-007-10 (December 2010). Indeed, considering ORS 240.570(2) and ORS 240.570(4), this Board has held that "[t]he statute does not provide for an appeal regarding either the change in position status or the designation of one's position as management or classified service." *Amber Harper v. State of Oregon, Oregon Parks and Recreation Department,* Case No. MA-029-12 (November 2012). LJ points to no case in which this Board determined that a change in the management service status of an employee to executive/unclassified constituted a reassignment, removal, or transfer.

Because LJ spent all but four days of her employment as a member of management service, changing LJ to become a member of executive/unclassified service is more appropriately viewed as a reclassification. However, this interpretation of events would not benefit LJ, because this Board does not have jurisdiction over reclassification decisions. *Matthew A. Rieke v. State of Oregon, Department of Human Services, Office of Human Resources*, Case No. MA-2-06 (August 2006); *See also Herron v. State of Oregon, Department of Corrections*, Case No, MA-20-03 (November 2003) (this Board has no jurisdiction over management service correctional lieutenant's appeal of his position reclassification to classified correctional sergeant in a union bargaining unit).

////

////

Exhibit 1
Page 11 of 12

We conclude that all four of the ORS 240.205(4) requirements for LJ to be a principal assistant in executive/unclassified service were met at the time of her termination. This Board finds no legal theory or interpretation of ORS Chapter 240 which would permit consideration of LJ's management service before those requirements were met. Accordingly, the ALJ recommends that this Board dismiss the Appeal.

<u>PROPOSED ORDER</u>

The Appeal is dismissed.

SIGNED AND ISSUED 25 June 2025.

_____
B. Carlton Grew
Administrative Law Judge

NOTE: The Employment Relations Board's rules provide that the parties shall have 14 days from the date of service of a recommended order to file specific written objections with this Board. (The "date of filing objections" means the date that objections are received by the Board; "the date of service" of a recommended order means the date that the Board sends or personally serves the recommended order on the parties.) If one party has filed timely objections, but the other party has not, the party that has not objected may file cross-objections within 7 days of the service of the objections. Upon good cause shown, the Board may extend the time for filing objections and cross-objections. Objections and cross-objections must be simultaneously served on all parties of record in the case and proof of such service must be filed with this Board. Objections and cross-objections may be filed by uploading a PDF of the filing through the agency's Case Management System (preferred), which may be accessed at https://apps.oregon.gov/erb/cms/auth. Objections and cross-objections may also be filed by email by attaching the filing as a PDF and sending it to ERB.Filings@ERB.Oregon.gov. Objections and cross-objections may also be mailed, faxed, or hand-delivered to the Board. Objections and cross-objections that fail to comply with these requirements shall be deemed invalid and disregarded by the Board in making a final determination in the case. (*See* Board Rules 115-010-0010(10) and (11); 115-010-0090; 115-035-0040; and 115-070-0055.)

Exhibit 1
Page 12 of 12



Talia Yasmeen Guerriero
1000 SW Broadway Suite 2130
Portland, OR 97205
talia@beaconforjustice.com
Direct: (503) 658-9254
Fax: (503) 594-4689

October 23, 2024

***VIA EMAIL FILING ONLY***

Employment Relations Board
1225 Ferry St. S.E.
Salem. OR 97301
ERB.Filings@ERB.Oregon.gov

**Re:    AMENDED APPEAL OF PERSONNEL ACTION ISSUED BY THE STATE OF OREGON*:*
*Leann Johnson v. Oregon Health Authority***

Dear Board Members:

Please accept this appeal submitted by and through legal counsel on behalf of Leann Johnson ("Appellant") of the State of Oregon, Oregon Health Authority's ("OHA") decision to terminate her employment.

<u>**PROCEDURAL BACKGROUND**</u>

1.  OHA's decision to dismiss Ms. Johnson from state service was effective June 21, 2024, per the personnel document attached hereto as **Exhibit 1 (Dismissal Letter)**. This appeal was timely filed within 30 days of the effective date of the decision.

<u>**RELEVANT FACTS**</u>

<u>*Background*</u>

2.  The State describes Ms. Johnson's position as of her termination date as Equity & Inclusion Director / Diversity, Equity, and Inclusion Administrator 2 in the unclassified (executive) service; however, the State never offered Ms. Johnson a position entitled "Equity & Inclusion Director / Diversity, Equity, and Inclusion Administrator 2" that met the requirements for an unclassified (executive) service position under ORS 240.205.

    i.   First, the position offered to Ms. Johnson was not "designated as such by [the] executive or administrative officer [to whom she directly reported] with the approval of the Director of the Oregon Department of Administrative Services."

    ii.  Second, the position offered to Ms. Johnson did not meet the requirements of DAS Policy 30.000.01, which states that positions "identified as principal assistants, pursuant to ORS 240.205(4),

**Exhibit 2
Page 1 of 13**

Page **2** of **8**
October 23, 2024
*Johnson v. Oregon Health Authority*
*AMENDED APPEAL OF PERSONNEL ACTION*

require the approval of the Director of DAS to be placed in the unclassified 'executive' service."

3.  The State hired Ms. Johnson in September 2010 as the Diversity Development Executive Manager under the supervision of Tricia Tillman, the director of the Office of Multicultural Health and Services (OMHS) under the Oregon Department of Human Services.

4.  In 2011, OHA became a separate agency and OMHS was renamed the Office of Equity and Inclusion. In 2015, OHA Director Lynne Saxton hired Ms. Johnson into her last position at the State as the head of equity, which at the time was classified as a Principal Executive Manager G (PEM G), which met the requirements of management service and a supervisory position under ORS 243.650(16) and (23).

    i.  Ms. Johnson's personnel file does not include evidence that this 2015 position met the requirements of ORS 240.205, namely, there is no evidence it was "designated as such by [the] executive or administrative officer [to whom she directly reported] with the approval of the Director of the Oregon Department of Administrative Services" in 2015.

5.  In 2021, the State offered Ms. Johnson a position as the Equity & Inclusion Director / Diversity, Equity, and Inclusion Administrator 2, which met the requirements of management service and a supervisory position under ORS 243.650(16) and (23)."

    i.  Ms. Johnson's personnel file does not include evidence that this 2021 position met the requirements of ORS 240.205, namely, there is no evidence that it was "designated as such by [the] executive or administrative officer [to whom she directly reported] with the approval of the Director of the Oregon Department of Administrative Services" in 2021.

6.  On or around June 13, 2024, DAS issued a memorandum seeking approval for "the Director for Office of Equity & Inclusion to serve as a principal assistant under ORS 24.205(4)," stating that "documentation is not on file. Your approval would provide the required documentation for this category of service associated with this position."

### *Dr. Hathi's Hiring as OHA Director*

7.  In or around mid-January 2024, Dr. Sejal Hathi, MD became the OHA Director. In or around mid-March 2024, Ashley Thirstrup became Chief of Staff.

**Exhibit 2**
**Page 2 of 13**

Page **3** of **8**
October 23, 2024
*Johnson v. Oregon Health Authority*
*AMENDED APPEAL OF PERSONNEL ACTION*

8. At the time Dr. Hathi was hired Ms. Johnson – a Black woman – had a lengthy history of nearly 14 years of exemplary performance.

9. Over the first months of Dr. Hathi's tenure, Ms. Johnson observed Dr. Hathi appear to become tense when employees – including Ms. Johnson herself – provided Dr. Hathi with constructive criticism or feedback.

<u>*Ms. Johnson's Protected Activity*</u>
<u>*and Subsequent Retaliation*</u>

10. On or around December 21, 2023, Ms. Johnson had filed her first complaint with the Bureau of Labor and Industries ("BOLI") regarding her concerns of racial bias in a Human Resources investigation of one of the E&I employees. On or around February 28, 2024, BOLI mailed a letter to OHA and Ms. Johnson describing and enclosing Ms. Johnson's filed complaint.

11. On or around March 20, 2024, Ms. Johnson attended an OHA Leadership Team Meeting with Dr. Hathi. Ms. Johnson reported a good faith belief of violations of law, rules, or regulations and government mismanagement regarding a Behavioral Health Services report. For example, Ms. Johnson expressed concerns about whether there had been an equity review. The employee presenting the report indicated that they were concerned about the timeline of an equity review. Ms. Johnson also questioned the lack of an alternate format statement and potential violations of disability laws due to the format. Ms. Johnson perceived Dr. Hathi's response to Ms. Johnson as immediately defensive and hostile, making statements to Ms. Johnson that no one here is opposed to an equity review.

12. On or around March 20, 2024, Dr. Hathi promoted or created new positions for at least four caucasian employees while Ms. Johnson is unaware of any women of color in the agency that received a promotion to a permanent management position during this time. Ms. Johnson continued to feel that decisions were being made in a vacuum with no input from an equity perspective.

13. On or around April 11, 2024, Ms. Johnson reported to Dr. Hathi and other leaders a complaint that the new OHA logo might be problematic, including in regard to creating a hostile work environment, because it resembled the Imperial flag of Japan. Ms. Johnson recommended a pause due to a potential violation related to protected class because the Korean community of Oregon was possibly being harmed, but the leadership refused Ms. Johnson's recommendation to pause. Ms. Johnson then reported the matter to the Department of Administrative Services (DAS). Ms. Johnson's understanding is that her complaint led to repercussions for Dr. Hathi, and the logo process was subsequently paused against Dr. Hathi's prior decision. Thereafter, Ms. Johnson noticed a significant increase in retaliatory behaviors from Dr. Hathi against her.

**Exhibit 2**
**Page 3 of 13**

<u>*Ms. Johnson's Elevation of*</u>
<u>*Protected Complaints to DAS*</u>

14. On or around April 17, 2024, Ms. Johnson met with a DAS investigator, Travis Hampton, and made several protected complaints about Dr. Hathi's behavior that Ms. Johnson understood was part of a formal investigation into Dr. Hathi as a result of her complaints.

15. Ms. Johnson also complained about the agency's failure to adhere to policy, systemic issues related to pay equity, ongoing microaggressions toward Black people in particular in the agency, and leadership's failure to heed concerns about possible policy violations.

16. On or around April 24, 2024, another Black employee emailed a group of leaders, including Dr. Hathi, going in-depth about the problems of racial attacks and microaggressions within the agency causing "harm and oppression in the workplace." The employee described "During a 2024 Black History Month Panel Discussion hosted by the DAS Office of Cultural Change – there was a variety of common sentiment and experiences from some Black/African/African Descent Employees across the State of Oregon Enterprise." Ms. Johnson replied to all recipients of the other employee's email, including Dr. Hathi, and stated in part:

    "From an ethical perspective, I am blowing the whistle on this and seeking such protections. I too am tired. As a Black woman, I cannot let another Black woman be out there alone."

    A third employee replied all and stated in part:

    "I see you, I see myself in your words.
    I see my mother, my auntie, my grandmother, my grandfather, my great grandparents, my ancestors.
    I read your words, and I hear my voice.
    I hear my mother, my auntie, my grandmother, my great grandmother, my ancestors.
    We share a narrative, and just as Leann said,
    I too as a black woman cannot let another black woman be out there alone."

17. Ms. Johnson forwarded the email chain to Investigator Hampton. On or around April 26, 2024, Ms. Johnson met with Investigator Hampton again, who made a statement to Ms. Johnson along the lines that a lot is swirling at the Governor's Office level on this topic, he understood Ms. Johnson was in "whistleblower status," and that he understood Ms. Johnson to be a very respected leader and was providing an insider's view to the issues at OHA.

**Exhibit 2**
**Page 4 of 13**

Page **5** of **8**
October 23, 2024
*Johnson v. Oregon Health Authority*
*AMENDED APPEAL OF PERSONNEL ACTION*

18. Around this time and ongoing to date, Ms. Johnson began experiencing adverse physical and mental health effects as a result of the discrimination, retaliation, and hostile work environment she was enduring at OHA.

19. On or around May 1, 2024, Ms. Johnson attended two meetings with Dr. Hathi – one regarding the logo and one regarding a strategic plan. At the strategic plan meeting, Dr. Hathi stated to Ms. Johnson something along the lines that Ms. Johnson should choose her words wisely, which Ms. Johnson perceived to be said in an ominous and threatening fashion.

20. At some point in May 2024, Investigator Hampton informed Ms. Johnson that he did not have jurisdiction over a number of her complaints. On or around May 28, 2024, Ms. Johnson met with Investigator Hampton again. Investigator Hampton told Ms. Johnson that Jessica Knieling – DAS Human Resources – and Berri Leslie – the DAS Administrator and Dr. Hathi's supervisor – had been briefed about the matter and that another investigator by the name of Eric would be contacting Dr. Hathi to get her version of events in relation to Ms. Johnson's complaints.

21. On or around May 23, 2024, Ms. Johnson reported to OHA upper-level leadership, including Dr. Hathi, her good faith belief that OHA's press release regarding M-Pox violated non-discrimination and anti-harassment regulations and laws. Ms. Johnson became concerned about the leadership team being dismissive of these complaints and the potential harm to LGBTQ communities as a result of the press release.

### *OHA's Summary Termination of Ms. Johnson* *Shortly After Protected Complaints*

22. On or around May 29, 2024, Ms. Johnson emailed Investigator Hampton more details about her complaints about Dr. Hathi's policy violations related to retaliation, professionalism, hostile work environment, and patterns of mistreatment, summarizing as follows:

> "Taken in their entirety I am experiencing a hostile work environment, including reputational damage, harm to my health and I do question if this is not only due to my role in the agency, but my race as well. Additional women of color in the agency leadership are wondering the same."

23. Shortly thereafter and within the next couple of weeks, Ms. Johnson received information from OHA's shared calendar – at least once, maybe twice – that Dr. Hathi was meeting with Ms. Knieling about a "pending matter."

**Exhibit 2**
**Page 5 of 13**

Page **6** of **8**
October 23, 2024
*Johnson v. Oregon Health Authority*
*AMENDED APPEAL OF PERSONNEL ACTION*

24. On or around June 11, 2024, Ms. Johnson attended a leadership meeting with Dr. Hathi in which she felt Dr. Hathi was hostile and upset with Ms. Johnson. The discussion included statements that Ms. Johnson believed to be targeted at her in relation to admonishing the team to assume the "good intent of others" and statements encouraging the team to agree with and support group decisions. Ms. Johnson's perception was that this type of messaging was designed to shut down the opposition even when the opposition was based on a good faith belief of violations or mismanagement and to encourage people to just be "yes" people. Ms. Johnson also perceived a double standard in the messaging that she was to afford her colleagues on the OHA Leadership Team the benefit of "good intent," while the OHA Leadership Team appeared to assume her statements were being made with the intent to bring harm.

25. On June 21, 2024, Dr. Hathi and Human Resources Manager Angie Sifuentez summarily terminated Ms. Johnson's employment, stating that the meeting was "not a fact-finding" and that they would not offer her another position within the State., Upon information and belief, this is inconsistent with the State's common practice. When Ms. Johnson asked why Dr. Hathi was terminating her employment, Dr. Hathi cited strained relationships with herself, members of the leadership team, and within the agency.

26. OHA turned off Ms. Johnson's access shortly thereafter and did not give her a chance to properly say goodbye after nearly 14 years of employment at the State.

27. On June 28, 2024, Larry Bingham - External Relations – emailed Ms. Johnson a copy of an undated letter that had been released to the media. Therein, Dr. Hathi describes to Human Resources Director Midkiff the alleged reasons for Ms. Johnson's termination. Many of the cited reasons were not brought up at Ms. Johnson's termination meeting and Ms. Johnson does not remember ever receiving any coaching or being given any opportunity to address or explain the allegations. One of the reasons listed was a backlog of investigations, but OHA leadership had previously discussed that topic as either a systemic problem or not a problem at all – and yet somehow it was being blamed on Ms. Johnson after the fact of her termination. Dr. Hathi then concludes the letter describing reasons for Ms. Johnson's termination by citing to Ms. Johnson's protected activity:

> "Finally, I understand Leann has brought forward several complaints of race discrimination or retaliation against various personnel in the agency (none of which, I have been advised) have been substantiated. If there are any current outstanding complaints or if any future complaints are received, it is a priority to promptly investigate these matters and to take appropriate action to address any substantiated allegations."

**Exhibit 2**
**Page 6 of 13**

Page **7** of **8**
October 23, 2024
*Johnson v. Oregon Health Authority*
*AMENDED APPEAL OF PERSONNEL ACTION*

(**Exhibit 2 – Undated Hathi Letter**).

## LEGAL VIOLATIONS

28. Appellant contends that OHA's dismissal was unlawful because:

    I.  it was not taken in good faith for cause in violation of ORS 240.560(3) and (4) and OAR 115-045-0010, and OHA violated ORS 240.570(3),

    II.  Appellant was able and willing to fully and faithfully perform the duties of the position satisfactorily,

    III.  certain actions were taken in retaliation for Appellant's race and protected activity related to racial reasons, and

    IV.  a reasonable employer would not have dismissed Appellant:

        i.  by failing to present any charges;
        ii.  by skewing facts, ignoring evidence, and failing to conduct a proper, thorough, and unbiased investigation in compliance with applicable standards;
        iii.  by failing to allow Appellant to fully access and present evidence;
        iv.  by treating Appellant differently than similarly situated employees;
        v.  without giving Appellant the opportunity to correct her behavior through lesser discipline and failing to apply progressive discipline;
        vi.  by applying a sanction that is not objectively reasonable or proportionate to the charges;
        vii.  given Appellant's nearly 14-year tenure;
        viii.  given Appellant's lack of a record of discipline and long history of excellent performance and positive reputation.

2. In the alternative, Appellant contends that the act of assigning, reassigning, removing, and/or transferring Appellant from management service to unclassified service on or around June 13, 2024, without any notice to Appellant violated ORS 240.570(2), (4) and of ORS 240.560(3), (4) because:

    I.  it was not taken for the "good of the service" or part of a reorganization or lack of work,

    II.  it was taken for racial reasons in violation of ORS 240.560(3), and/or

    III.  it was not taken in good faith for cause pursuant to ORS 240.560(4).

**Exhibit 2
Page 7 of 13**

Page **8** of **8**
October 23, 2024
*Johnson v. Oregon Health Authority*
*AMENDED APPEAL OF PERSONNEL ACTION*

## **REQUESTED REMEDY**

29. Appellant requests the Board to order:

   I.   reversal of OHA's personnel actions of removing/transferring/reassigning Appellant from management service and/or Appellant's termination,
   II.  removal of the personnel actions from her file, and
   III. immediate reinstatement and the reemployment of Appellant into her position with back pay and benefits.

30. In the alternative, Appellant requests the board reinstate Appellant to state service and otherwise modify OHA's action.

Respectfully submitted,

**BEACON EMPLOYMENT LAW**

Talia Guerriero

Exhibit 2
Page 8 of 13

 

Office of Human Resources

Tina Kotek, Governor

500 Summer Street NE
Salem, Oregon 97301
(503) 509.3530

June 21, 2024

<u>Via USPS and Email</u>

Re:                              Notice of Removal from State Service
Effective Date:          June 21, 2024

Dear Leann:

You are employed with the Oregon Health Authority in the position of Equity & Inclusion Director / Diversity, Equity, and Inclusion Administrator 2, in unclassified (executive) service. Under relevant law and policy, unclassified (executive) service positions serve "at will" and the director exercises discretion when determining whether to end an appointment per DAS Policy 40.035.01.

I am exercising my authority to end your executive service appointment on June 21, 2024. In making this decision, although it is not necessary to list any specific grounds, I considered factors that include the transition to a new agency director, my strategic goals, and the organizational health of this agency.

As explained in a meeting with you, this direction respects the autonomy of a new director to build an agency that aligns with their goals and to shape organizational culture moving forward. This transition, while a motivating factor in my decision-making, is not made in a vacuum, but rather considers multiple factors.

The State thanks you for your time in public service. Your final paycheck will be direct deposited and notice regarding continuation of benefits (COBRA) will be mailed to you. You will continue to have access to the Employee Assistance Program through July; you may call Canopy at 800-433-2320, text to 503-850-7721, or email info@canopywell.com.

Sincerely,

Exhibit 1
Johnson SPRL Appeal
Page 1 of 1
Exhibit 2
Page 9 of 13



OFFICE OF THE DIRECTOR

Tina Kotek, Governor



500 Summer St. NE E-20
Salem, OR 97301
Voice: 503-947-2340
Fax: 503-947-2341
www.oregon.gov/oha

Director Midkiff:

In your capacity as OHA's Human Resources (HR) Director, I am following up on my request for HR's assistance in processing the termination of employment for Leann Johnson, OHA Division Director of Equity & Inclusion (E&I), effective June 20, 2024. I considered whether continued engagement with Ms. Johnson through feedback and coaching would address my concerns. I determined this approach will not be effective for reasons explained in this memo.

Since beginning my appointment as OHA director on January 16, 2024, I have deliberately and with significant reflection assessed the culture of this organization, identified my leadership objectives, and considered the vision I have for OHA. As a female director of color, my leadership and organizational goals for OHA are informed by my own life experiences and the importance of inclusion for OHA, for its external partners, and for all Oregonians. As director, I am responsible for advancing this agency's equity work both internally and externally with the communities and partners we serve. This memo identifies some of the considerations supporting my decision that ending Ms. Johnson's employment is necessary to move this organization in a direction that aligns with my equity vision.

To be clear, I am not making this decision rashly or because of any one interaction with Ms. Johnson. I recognize that some external partners have provided favorable feedback regarding some of her outward facing work. Here, a concern is an imbalance in how Ms. Johnson conducts herself within OHA. My decision tracks my observations since beginning as OHA's director as well as, more importantly, input, including requests for assistance, from leadership team members and staff who have courageously and of their own volition shared their observations with me about working with Leann. These observations include:

- Significant delays in investigating and closing OHA employees' civil rights complaints, ranging from sexual harassment to racial discrimination, filed with the division she leads – resulting in an erosion of trust and confidence in the office and impacting the agency's ability to respond to parties effectively and appropriately.
- Challenges valuing and executing enterprise-, agency-, and team-wide needs and decisions over her personal and divisional priorities.
- An approach to navigating some disagreements and differences of opinion with colleagues, supervisors, and staff outside her division that has impacted these individuals' psychological safety, hindered effective collaboration, and undermined trust and morale on the agency leadership team.
- An inability, or unwillingness, to constructively receive, accept, and act upon feedback – from myself and from other members of executive agency leadership, on some of these and other points privately discussed with her.

2024-0648 001 06/28/2024

Exhibit 2
Johnson SPRL Appeal
Page 1 of 2

Exhibit 2
Page 10 of 13

As we move forward, it is imperative that all agency leaders commit to fostering a supportive and inclusive environment for all staff – one that helps attract, retain, and support the growth of staff of all backgrounds and that fosters authentic and genuine belonging. My objective is to find a permanent E&I Director who will partner with the agency leadership team to thoughtfully strive to:

- Dismantle intra- and inter-agency siloes, and both acknowledge and proactively foster an agency where all divisions, all units, all staff may cultivate leadership and ownership over our equity and inclusion goals.
- Steward, shape, and support a learning-centric culture– ensuring that staff and team members feel safe to ask questions, express differing opinions, and make mistakes without fear of belittlement or retaliation.
- Call in rather than call out, modeling and assuming positive intent and mutual respect with others.
- Practice and prioritize customer service and outcomes-driven accountability across divisional programs, policies, and services, both internal and external to OHA – and transparently elevate any barriers to doing so to agency leadership.

These commitments will be crucial to achieving our 2030 vision to eliminate health inequities and fostering belonging both within our own workplace and with the communities and partners we are called to serve. I look forward to bringing on a national search firm that can help us find a strong new leader.

Please proceed with drafting the necessary documents for Leann's separation and let me know if you need any further information or assistance in this process. As noted previously, I plan to take this action on Thursday, June 20 at our regularly scheduled meeting. I have asked Ashley to join and would also like to have you or one of the members of your HR leadership team be present with Ashley and me. This meeting will be in person in our Portland office, and it is important to me to have HR present in person as a resource and support for Leann.

Finally, I understand Leann has brought forward several complaints of race discrimination or retaliation against various personnel in the agency (none of which, I have been advised, have been substantiated). If there are any current outstanding complaints or if any future complaints are received, it is a priority to promptly investigate these matters and to take appropriate action to address any substantiated allegations.

Thank you for your attention to these requests.

With best,

Sejal

2024-0648 002 06/28/2024
**Exhibit 2**
**Johnson SPRL Appeal**
**Page 2 of 2**
**Exhibit 2**
**Page 11 of 13**

## Oregon Employment Relations Board – Proof of Service

Applicant's Name:   Leann Johnson

Name of Case:      _Leann Johnson v. Oregon Health Authority_ Case No.  MA-008-24
Administrative Law Judge:          B. Carlton Grew

Name of Party Serving Documents:              Leann Johnson

Attorney for Party Serving Documents: Talia Guerriero, OSB #115271, Beacon Employment Law

On (Date):      October 23, 2024            I served the following document(s):

Document Title: Amended Appeal of Personnel Action Issued by the State of Oregon

On the following person(s):

Name of Organization of Department:      State of Oregon, c/o Oregon Health Authority

          c/o Attorney in Charge, Tessa M. Sugahara
Email Address: * Tessa.Sugahara@doj.oregon.gov & Karen.Smith@doj.oregon.gov

*Required if served electronically.   **Required if served by facsimile.

**Method of Service (Check all that apply):**

_____          **By Personal Service:** I personally delivered the above document(s) to the person above at the address listed above.

_____          **By U.S. Mail:** I enclosed the above document(s) in a sealed envelope addressed to the address above and deposited with the United States Postal Service with postage fully prepaid.

_____          **By overnight Delivery:** I enclosed the above document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the address above. I placed the envelope or package for collection at an office or regularly utilized drop box of the overnight delivery carrier.

_____          **By Facsimile:** I faxed the above document(s) to the fax number listed above.

_____          **By Electronic Mail:** I caused the above document(s) to be sent to the persons at the electronic service address listed above.

Page **1** of **2 - Oregon Employment Relations Board – Proof of Service**

Exhibit 2
Page 12 of 13

**XX**＿＿＿＿	**By Uploading the Document into the Case Management System** (this method may be used only when the served party is using the Case Management System). I caused the filing to be uploaded to the Case Management System.


DATED:	October 23, 2024.	**BEACON EMPLOYMENT LAW**


By: *s/Amy Joy Mathis*＿＿＿＿＿＿
Amy Joy Mathis, Paralegal
amy@beaconforjustice.com

**Page 2 of 2 - Oregon Employment Relations Board – Proof of Service**

**Exhibit 2
Page 13 of 13**

**Talia Y. Guerriero**, OSB #115271
talia@beaconforjustice.com
**David C. Higgs**, OSB #114193
david@beaconforjustice.com
Beacon Employment Law
1000 SW Broadway, Suite 2130
Portland, OR 97205
503-673-1388 (Phone)
503-564-4689 (Fax)
Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **LEANN JOHNSON**, an individual, | Case No. 6:25-cv-00470-AA |
| Plaintiff, | |
| v. | |
| **STATE OF OREGON,** by and through the **OREGON HEALTH AUTHORITY**; and **SEJAL HATHI**, in her individual and official capacities; **BERRI LESLIE**, in her individual and official capacities; **JENNIFER MIDKIFF**, in her individual and official capacities**; ANGELA SIFUENTEZ**, in her individual and official capacities; and **JESSICA KNIELING**, in her individual and official capacities; | **PLAINTIFF'S SUR-REPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE** |
| Defendants. | |

**Exhibit 3**
**Page 1 of 13**

## I.    INTRODUCTION

Defendants' Reply brief addresses several new matters that require Plaintiff's sur-reply. First, Defendants structured their Reply around an ERB administrative decision that was adopted the same day they filed their Reply; however, the ERB decision helps Plaintiff rather than Defendants by documenting the precise procedural manipulation Plaintiff alleges. Second, Defendants materially mischaracterize and make several factual errors regarding Plaintiff's legal theories and claims, particularly in light of the ERB decision.

## II.    NEW MATTERS REQUIRING SUR-REPLY

### A.  The ERB Decision Supports Plaintiff's Claims

The ERB decision does not preclude constitutional review of the actions at issue in Plaintiff's Amended Complaint. Defendants raise the ERB's decision for the first time in their Reply (without submitting a copy to the Court), declaring:

> "However, as [Plaintiff] knows, an opinion was issued by B. Carlton Grew, an administrative law judge for the Employment Relations Board, five days earlier determining as a matter of law that, on her termination, she was at-will. [. . .] Regardless, at the time of her removal from public service, she was "unclassified" and therefore an at-will employee. Am. Cp. ⁋ 43; *L.J. v. State of Oregon, Oregon Health Authority*, Case No. MA-008024 (Emp. Rel. Bd.) (Grew, ALJ)."

Defs.' Reply, at 2, 5. The ERB's factual findings support Plaintiff's arguments in this case and undermine Defendants' arguments. For example, the ERB decision provides a detailed roadmap of how Defendants discovered Plaintiff's protected status only after deciding to terminate her, then rushed to eliminate her due process protections through post-hoc paperwork without notifying or providing Plaintiff an opportunity to object. The Court should reject Defendants' attempt to frame the ERB decision as defeating Plaintiff's constitutional claims in this Court.

Page 2 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

Exhibit 3
Page 2 of 13

Plaintiff alleges in this lawsuit – and ERB found – that she was technically a "management service" employee with property rights for at least some (if not all) of her employment with the State. Am. Compl. ¶¶ 42, 43; Guerriero Decl., Ex. 1, at 9. The ERB found that the State failed to perfect Plaintiff's ORS 240.205(4) "unclassified" status until the issuance of her termination letter. In this forum, Plaintiff seeks to hold Defendants accountable for their constitutional due process violations related to their actions: first in deciding to terminate her employment, then taking undisclosed actions to deprive Plaintiff of her management service protections upon the issuance of her termination letter. Am. Compl. ¶¶ 43, 44, 46. Plaintiff alleges that Defendants' motives were improper in that they sought to avoid the consequences of their mistaken "management service" classification by secretly converting Plaintiff's status and then terminating her employment without notice or an opportunity to be heard. *Id*. ¶¶ 42-46.

Plaintiff filed a Complaint with ERB on or around July 19, 2024 (and an Amended Complaint on or around October 23, 2024) seeking clarity from the ERB as to (1) whether Defendants had properly corrected their mistaken management service classification by the time of Plaintiff's termination,[1] and (2) whether ERB had jurisdiction to address Defendants' improper motive and conduct in depriving Plaintiff of her management service protections by using a tactic of surreptitiously reclassifying her to executive service, and only *after* deciding to

---

[1] At least one Oregon federal district court has concluded that the Oregon Supreme Court would likely find that the ERB has exclusive jurisdiction to make a state employee classification determinations, but that would not preclude constitutional claims in the courts based on facts about how those classifications are handled. *Nelson-Baca v. Oregon by & through Dep't of Hum. Servs.*, No. 3:18-CV-00300-YY, 2021 WL 3702486, at *7 (D. Or. Apr. 21, 2021), *report and recommendation adopted sub nom. Nelson-Baca v. Oregon*, No. 3:18-CV-300-YY, 2021 WL 2711466 (D. Or. July 1, 2021).

Page 3 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

Exhibit 3
Page 3 of 13

terminate her employment and realizing she may have management service employment

protections. Guerriero Decl., Ex. 1, at 7, Ex. 2. ERB Administrative Law Judge Carlton Grew

held a hearing on December 6, 2024 and February 27, 2025 on the following questions:

> "Does the Board have jurisdiction over Appellant's claims that the Oregon Health
> Authority violated ORS 240.560(3) and (4); OAR 115-045-0010; and ORS
> 240.570(2), (3), and (4) when it (a) reassigned or removed Appellant from
> management service on June 18, 2024, and/or (b) when it terminated Appellant's
> employment?"[2]

Guerriero Decl., ¶ 3-4, Ex. 2.  On July 23, 2025, ERB adopted these findings of fact:

- #20: HR Director Midkiff discovered the classification problem only *after* Director Hathi

  decided to terminate Plaintiff.

- #21: The discovery that Plaintiff had management service protections prompted urgent

  efforts to "cure the problem."

- #22: DAS Director Leslie's memorandum approving a designation of "unclassified

  service" (i.e., lack of due process protections) came on June 18, 2024, specifically in

  response to Director Midkiff's discovery of Plaintiff's *actual* classification.

---

[2] ERB only determined its own jurisdiction under Oregon state employment law, not this Court's
jurisdiction over federal constitutional claims. ERB applied Oregon statutory requirements for
"principal assistant" designation under ORS 240.205(4) and found it did not itself have
jurisdiction over the actions that resulted in the reclassification or termination of Plaintiff's
management service. However, these findings do not have any effect on whether the very same
actions violated 42 U.S.C. § 1983. In fact, the lack of ERB's jurisdiction over claims of
procedural manipulation of the reclassification timing means that federal court review is the only
available remedy for the alleged violations. In other words, the jurisdictional gap makes federal
review under § 1983 essential.

Page 4 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO
DISMISS AND TO SUBSTITUTE AND TO STRIKE

**Exhibit 3**
**Page 4 of 13**

- #23: Defendant Hathi issued a termination letter on June 21, 2024 (after receiving the approval), which ERB determined was simultaneously the final factor that allowed the State to consider Plaintiff to be an "unclassified employee."

Guerriero Decl., Ex. 1, at 7-8, 10-11. **In other words, ERB found that Plaintiff's termination letter served the dual purpose of stripping her of management service protections and terminating her employment in a single action**, meaning Individual Defendants' challenged conduct occurred while Plaintiff still possessed management service protections. Plaintiff continues to contend that this very sequence of events described in ERB's findings of fact violates procedural due process.

In fact, ERB explicitly found Plaintiff had management service rights for nearly 9 years until her termination, stating:

- "We determine, and the parties effectively agree, that [Plaintiff's] status as a member of the executive/unclassified service did not meet the statutory requirements for that service from her July 2015 hiring **until at least the June 18, 2024**, letter from DAS Director Leslie formally designating LJ's position as a [principal] assistant in executive/unclassified service." Guerriero Decl., Ex. 1, at 9 (emphasis added).

- "[. . .] we conclude that, **with the issuance of [Plaintiff's] termination letter on June 21, 2024**, OHA had satisfied the ORS 240.205 requirements to designate [Plaintiff's] position as 'principal assistant.'" *Id.* at 11 (emphasis added).

Stated another way, ERB adopted the finding that Plaintiff objectively had management service protections for 9 years. The State did not object to the findings above or to the recommended

Page 5 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

**Exhibit 3**
**Page 5 of 13**

order. Defendants' frantic efforts to "cure the problem" of Plaintiff's protected employment status after deciding to terminate Plaintiff demonstrates that Defendants knew she had protected status at the time of the termination decision. However, constitutional due process does not (and should not) allow the State to strip an employee's management service protections without notice and contemporaneously with a termination letter.

**B. Material Misrepresentations Requiring Correction**

Defendants' material misrepresentations about Plaintiff's claims and legal arguments require correction, particularly in light of their mischaracterizations of ERB's decision.

**1. Defendants Ignore *Ex Parte Young* in Official Capacity Argument (First, Second, Third, and Fourth Claims for Relief)**

Defendants' argument regarding official capacity immunity under *Deep Sea Research* and *Pennhurst* ignores the *Ex Parte Young* doctrine argued by Plaintiff in her Response, which permits suits against state officials in their individual capacities for ongoing constitutional violations. Plaintiff alleges ongoing reputational harm and lack of redress. The fact that these harms stem from acts committed by state officials acting under color of law as described in the ERB decision strengthens, not diminishes, individual liability.

**2. Defendants' Arguments Regarding Property Interests Do Not Address the Relevant Issues (Third Claim for Relief)**

First, Defendants' citation to the new ERB decision misconstrues Plaintiff's property interest allegations, which specifically assert that "Defendants Hathi, Sifuentes, Leslie, Midkiff, and Knieling deprived Plaintiff of her property interest in her employment by (a) effectuating a change from the "management service" to "unclassified service" **without notice or an**

Page 6 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

**Exhibit 3**
**Page 6 of 13**

**opportunity to be heard**, and (b) terminating her employment without **procedural due process**, including a failure to provide her with notice or an opportunity to be heard." Am. Compl. ¶ 81 (emphasis added). As described above, the ERB decision expressly found that Plaintiff possessed management service protections, and merely concluded that it did not have jurisdiction because Defendant Hathi's termination letter simultaneously stripped Plaintiff of her management service protections under the ORS 240 statutory scheme. This is precisely the type of procedural manipulation that Plaintiff is claiming federal civil rights law prohibits, including that the State cannot eliminate an employee's due process rights in this manner and with this motive.

Second, Defendants' discussion about *Engquist* continues to conflate and confuse the relevant issues. Plaintiff specifically alleges both procedural and substantive due process claims related to her property right. *Id.* ¶¶ 81-82. Defendants do not address Plaintiff's procedural due process count but move to dismiss her substantive due process count. Regarding Plaintiff's substantive due process claims, *Enguist* explicitly stated that the Ninth Circuit has not yet decided whether "substantive due process protects the right to a particular public employment position" and instead discusses only occupational liberty interests (which is Plaintiff's Fourth Claim for Relief). *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996–97 (9th Cir. 2007), *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008). Defendants' other citations to *Nicholas* and *Silva* are not directly on point. In contrast, the *Dunn* court explicitly described:

> "An employee has a constitutionally protected property interest in continued employment if he has a 'reasonable expectation or a "legitimate claim of entitlement" to it.' [] A legitimate claim of entitlement arises if it is created by existing rules or understandings that stem from an independent source, such as state

Page 7 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

Exhibit 3
Page 7 of 13

law. [] A statute, rule or contract may also confer the property interest. [] Here, the
District concedes that both plaintiffs had contracts for employment with it from July
1, 2008, through June 30, 2011. Therefore, each had a constitutionally protected
property interest in continued employment through the end date of the contracts."

(citations omitted). Similarly, here, Plaintiff has alleged a legitimate claim of entitlement to her

management service position for both her substantive and procedural due process claims.

Third, Defendants continue to misrepresent *Elliot v. Staton*, 2012 WL 2374986 (D. Or.

2012), by claiming that it establishes a categorical bar to substantive due process claims in the

employment context. *Elliot* merely reaffirmed that it is not a settled issue and analyzed qualified

immunity under the assumption that substantive due process rights *could* exist. The *Elliot* court

even discussed a case finding substantive due process rights when "school authorities ... make an

arbitrary and capricious decision significantly affecting a tenured teacher's employment status."

*Id.* Similarly, here, the Amended Complaint and the ERB decision describe the type of arbitrary

and capricious decision-making described in *Elliot.*

### 3. Defendants Mischaracterize Legal Issues Related to Name Clearing Hearings and Liberty Interests (Fourth Claim for Relief)

First, Defendants asked the Court to convert a limited portion of their motion to dismiss

(related to the publication of the termination letter) to a motion for summary judgment. In

response, Plaintiff requested leave to amend the Complaint to attach Dr. Hathi's letter, which

would make this matter most appropriate for resolution under the motion to dismiss standard for

the best use of the Court's resources at this early stage of litigation. However, should the Court

instead be inclined to convert this matter into a motion to summary judgment, the Court would

apply the more favorable summary judgment standard in viewing the evidence in the light most

Page 8 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO
DISMISS AND TO SUBSTITUTE AND TO STRIKE

Exhibit 3
Page 8 of 13

favorable to the non-moving party and draw all reasonable inferences in Plaintiff's favor. And Plaintiff respectfully requests that she be given a reasonable opportunity to fully brief the issue and present all evidence and argument regarding the genuine issues of material fact concerning whether the statement is stigmatizing and/or defamatory. *See, e.g.,* ORCP 21(A)(2)(b) (requiring that when matters outside the pleadings are presented, "all parties will be given a reasonable opportunity to present affidavits, declarations, and other evidence.").

Second, Defendants falsely claim that Plaintiff's Response relies on "vague and generalized allegations" when it specifically enumerated six categories of statements. Am. Compl. ¶ 48. Defendants also mistakenly claim Plaintiff's Response failed to address the civil rights investigation delays although Plaintiff explicitly argued that allegations of causing "significant delays in investigating and closing OHA employees' civil rights complaints, ranging from sexual harassment to racial discrimination" implicated her moral fitness. Pl. Resp. at 17. And Defendants incorrectly suggest Plaintiff introduced new spokesperson allegations when the Amended Complaint in fact contains such a reference. Am. Compl. ¶ 51. Defendants also mischaracterize their own cited authority by arguing that *Campanelli* supports dismissal although that case includes nearly identical allegations that a coach caused players to be "in trouble psychologically" that were found stigmatizing.

Third, Defendants mischaracterize the publication requirement by suggesting Plaintiff must prove that Defendant Hathi had a direct role in publication. Plaintiff's Response argues that the constitutional violation stems from the creation and content of the stigmatizing statements themselves. Publication is a separate element that is satisfied by Defendants' own

Page 9 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

Exhibit 3
Page 9 of 13

acknowledgment that the termination letter was disclosed through public records requests. In any event, Plaintiff is entitled to discovery on the Individual Defendants' role in the publication.

**4. Defendants Misapply Pleading Standards When Discussing Sufficiency of Allegations (First, Second, Third, Fourth, Sixth, and Tenth Claims for Relief)**

Defendants wrongly claim Plaintiff provided "scant" allegations when Plaintiff's Response detailed each Individual Defendant's specific role. Defendants also incorrectly describe Individual Defendants' acts as "ministerial," ignoring Plaintiff's argument that Defendants deliberately circumvented due process protections. Even the ERB's detailed findings of fact establish a timeline demonstrating the procedural manipulation that Plaintiff alleges:

- Finding #19 documents that "in mid-June 2024, OHA Director Hathi decided to terminate LJ's employment with OHA and directed Department HR staff to prepare the required documents."

- Finding #20 then establishes that "[a] day or two afterward, OHA HR Director Midkiff discovered that the documents in LJ's personnel file did not meet the requirements under ORS 240.205(4) for classification as principal assistant," prompting Midkiff to ask her staff to "source" an approval letter from DAS to "cure the problem." The ERB found that HR officials "exchanged several high priority emails and urgent chat messages" in this effort, including "requests for phone calls and meetings."

- Finding #23 confirms the simultaneity of the constitutional violation, noting Defendant Hathi issued the termination letter "after receiving the June 18 designation" and was "the final factor that allowed the State to consider Plaintiff to be an 'unclassified employee.'"

Page 10 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

Exhibit 3
Page 10 of 13

Defendants continue misrepresent their own standard by denying that they are demanding

"smoking gun" evidence while simultaneously criticizing Plaintiff for lacking explicit proof of

discriminatory intent. Circumstantial evidence, such as temporal proximity, is relevant and

probative evidence under well-established precedent.

**5. Defendants' Arguments on Qualified Immunity Contradict the ERB's Findings (Third and Fourth Claims for Relief)**

First, Defendants inaccurately claim that the constitutional violations here are too

"vague" to defeat qualified immunity; however, even the ERB decision establishes the specific,

intentional conduct that defeats any immunity claim. For example, ERB describes that OHA

deliberately reclassified Plaintiff's position to avoid statutory protections, with HR officials

exchanging "high priority emails and urgent chat messages" to retroactively "cure the problem"

of Plaintiff's management service status after the termination decision was made. Guerriero

Decl. Ex. 1, at 7. Furthermore, ERB's decision confirms the surreptitious nature of the Individual

Defendants' conduct, which defeats any claim of good faith: if the reclassification was

legitimate, why did Defendants conceal it from Plaintiff entirely, completing the paperwork in

secret just days before her termination rather than providing her with notice?

Second, the core protections against discriminatory termination, lack of due process, and

reputational harm have been clearly established long before Plaintiff's termination. Even the

ERB decision acknowledges that these Individual Defendants were HR professionals and agency

directors whose job was to know and implement such requirements. Professional HR and

management officials cannot claim qualified immunity for violating clearly established

employment laws they were hired to implement. *See, e.g.*, *Cutler v. Stephen F. Austin State*

Page 11 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO
DISMISS AND TO SUBSTITUTE AND TO STRIKE

Exhibit 3
Page 11 of 13

*University*, 767 F.3d 462, 473 (5th Cir. 2014) ("reasonable officials" should have known the plaintiff's speech was protected and that terminating him would violate the First Amendment); *Business Leaders in Christ v. University of Iowa*, 991 F.3d 969, 985 (8th Cir. 2021) (finding that it was "clearly established that a university may not discriminate on the basis of viewpoint in a public forum and reversing dismissal of individual defendants). Such a finding would incentivize government HR departments to remain deliberately ignorant of the very laws that they are paid to enforce. As such, Defendants' attempt to claim confusion about the applicable laws here fails. In any event, any factual disputes over intent or impact preclude dismissal at this stage.

Third, Defendants criticize Plaintiff for not addressing qualified immunity on the First and Second Claims for Relief. However, neither the heading nor the content of the section of Defendants' initial briefing on qualified immunity specified that Defendants were seeking qualified immunity on Plaintiff's First and Second Claims for Relief. Defs.' Mot. at 16-20. Rather, Defendants only mentioned Plaintiff's Third and Fourth Claims for Relief, which are the claims Plaintiff included in her heading. *Id.* Regardless, to the extent Defendants sufficiently raised qualified immunity as to Plaintiff's First (Equal Protection) and Second (Race) Claims for Relief, Plaintiff directly addressed the substance of this matter in her Response, stating:

> "While Defendant again attempts to hold Plaintiff to a heightened pleading standard at this early stage, a review of Plaintiff's Amended Complaint demonstrates she has sufficiently alleged clear constitutional violations: **the right to be free from racial discrimination and retaliation for engaging in protected activities** and the right to procedural due process violations. Unlike cases requiring a more nuanced legal analysis, the constitutional violations here represent well-known violations that any reasonable official would understand are unlawful. First, **Plaintiff's Amended Complaint thoroughly describes a pattern of disparate treatment that escalated following Plaintiff's protected complaints about racial discrimination. The right to be free from racial**

Page 12 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

Exhibit 3
Page 12 of 13

**discrimination in employment as well as the right to be free from retaliation for reporting racial discrimination has been clearly established for decades**. *See, e.g.,* Title VII, ORS 659A.030, ORS 659A.199, 42 U.S.C. 1983, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). **No reasonable official could believe that making employment decisions based on race or complaints of racial discrimination was constitutional**."

Pl.'s Resp., at 23 (emphasis added); *see also,* at 5 ("Fifth, their qualified immunity argument seeks to resolve factual disputes inappropriate for resolution at the motion to dismiss stage, particularly where the legal violations alleged – **racial discrimination, retaliation**, and denial of due process – have been clearly established for decades.").[3] Therefore, Defendants assertions that Plaintiff failed to address the First and Second Claims for Relief is simply inaccurate.

**C.  CONCLUSION**

For the reasons stated above and in Plaintiff's earlier Response (Dkt. #15), Defendants' Motions should be denied in their entirety. In the alternative, Plaintiff should be granted leave to file a Second Amended Complaint.

Dated: July 23, 2025.                        **BEACON EMPLOYMENT LAW**

                                                       s/Talia Y. Guerriero
                                                      Talia Y. Guerriero, OSB #115271
                                                      talia@beaconforjustice.com
                                                      David C. Higgs, OSB #114193
                                                      david@beaconforjustice.com
                                                      Of Attorneys for Plaintiff

---

[3] This is also applicable to the claims of discrimination based on gender and/or intersections of Plaintiff's race and gender.

Page 13 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE

Exhibit 3
Page 13 of 13