**Talia Y. Guerriero**, OSB #115271
talia@beaconforjustice.com
**David C. Higgs**, OSB #114193
david@beaconforjustice.com
Beacon Employment Law
1000 SW Broadway, Suite 2130
Portland, OR 97205
503-673-1388 (Phone)
503-564-4689 (Fax)
Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **LEANN JOHNSON**, an individual, | Case No. 6:25-cv-00470-AA |
| Plaintiff, | |
| v. | |
| **STATE OF OREGON,** by and through the **OREGON HEALTH AUTHORITY**; and **SEJAL HATHI**, in her individual and official capacities; **BERRI LESLIE**, in her individual and official capacities; **JENNIFER MIDKIFF**, in her individual and official capacities**; ANGELA SIFUENTEZ**, in her individual and official capacities; and **JESSICA KNIELING**, in her individual and official capacities; | **PLAINTIFF'S SUR-REPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE** |
| Defendants. | |

## I.    INTRODUCTION

Defendants' Reply brief addresses several new matters that require Plaintiff's sur-reply. First, Defendants structured their Reply around an ERB administrative decision that was adopted the same day they filed their Reply; however, the ERB decision helps Plaintiff rather than Defendants by documenting the precise procedural manipulation Plaintiff alleges. Second, Defendants materially mischaracterize and make several factual errors regarding Plaintiff's legal theories and claims, particularly in light of the ERB decision.

## II.    NEW MATTERS REQUIRING SUR-REPLY

### A.  The ERB Decision Supports Plaintiff's Claims

The ERB decision does not preclude constitutional review of the actions at issue in Plaintiff's Amended Complaint. Defendants raise the ERB's decision for the first time in their Reply (without submitting a copy to the Court), declaring:

> "However, as [Plaintiff] knows, an opinion was issued by B. Carlton Grew, an administrative law judge for the Employment Relations Board, five days earlier determining as a matter of law that, on her termination, she was at-will. [. . .] Regardless, at the time of her removal from public service, she was "unclassified" and therefore an at-will employee. Am. Cp. ¶ 43; *L.J. v. State of Oregon, Oregon Health Authority*, Case No. MA-008024 (Emp. Rel. Bd.) (Grew, ALJ)."

Defs.' Reply, at 2, 5. The ERB's factual findings support Plaintiff's arguments in this case and undermine Defendants' arguments. For example, the ERB decision provides a detailed roadmap of how Defendants discovered Plaintiff's protected status only after deciding to terminate her, then rushed to eliminate her due process protections through post-hoc paperwork without notifying or providing Plaintiff an opportunity to object. The Court should reject Defendants' attempt to frame the ERB decision as defeating Plaintiff's constitutional claims in this Court.

Plaintiff alleges in this lawsuit – and ERB found – that she was technically a "management service" employee with property rights for at least some (if not all) of her employment with the State. Am. Compl. ¶¶ 42, 43; Guerriero Decl., Ex. 1, at 9. The ERB found that the State failed to perfect Plaintiff's ORS 240.205(4) "unclassified" status until the issuance of her termination letter. In this forum, Plaintiff seeks to hold Defendants accountable for their constitutional due process violations related to their actions: first in deciding to terminate her employment, then taking undisclosed actions to deprive Plaintiff of her management service protections upon the issuance of her termination letter. Am. Compl. ¶¶ 43, 44, 46. Plaintiff alleges that Defendants' motives were improper in that they sought to avoid the consequences of their mistaken "management service" classification by secretly converting Plaintiff's status and then terminating her employment without notice or an opportunity to be heard. *Id*. ¶¶ 42-46.

Plaintiff filed a Complaint with ERB on or around July 19, 2024 (and an Amended Complaint on or around October 23, 2024) seeking clarity from the ERB as to (1) whether Defendants had properly corrected their mistaken management service classification by the time of Plaintiff's termination,[1] and (2) whether ERB had jurisdiction to address Defendants' improper motive and conduct in depriving Plaintiff of her management service protections by using a tactic of surreptitiously reclassifying her to executive service, and only *after* deciding to

---

[1] At least one Oregon federal district court has concluded that the Oregon Supreme Court would likely find that the ERB has exclusive jurisdiction to make a state employee classification determinations, but that would not preclude constitutional claims in the courts based on facts about how those classifications are handled. *Nelson-Baca v. Oregon by & through Dep't of Hum. Servs.*, No. 3:18-CV-00300-YY, 2021 WL 3702486, at *7 (D. Or. Apr. 21, 2021), *report and recommendation adopted sub nom. Nelson-Baca v. Oregon*, No. 3:18-CV-300-YY, 2021 WL 2711466 (D. Or. July 1, 2021).

terminate her employment and realizing she may have management service employment

protections. Guerriero Decl., Ex. 1, at 7, Ex. 2. ERB Administrative Law Judge Carlton Grew

held a hearing on December 6, 2024 and February 27, 2025 on the following questions:

> "Does the Board have jurisdiction over Appellant's claims that the Oregon Health
> Authority violated ORS 240.560(3) and (4); OAR 115-045-0010; and ORS
> 240.570(2), (3), and (4) when it (a) reassigned or removed Appellant from
> management service on June 18, 2024, and/or (b) when it terminated Appellant's
> employment?"[2]

Guerriero Decl., ¶ 3-4, Ex. 2.  On July 23, 2025, ERB adopted these findings of fact:

- #20: HR Director Midkiff discovered the classification problem only *after* Director Hathi

  decided to terminate Plaintiff.

- #21: The discovery that Plaintiff had management service protections prompted urgent

  efforts to "cure the problem."

- #22: DAS Director Leslie's memorandum approving a designation of "unclassified

  service" (i.e., lack of due process protections) came on June 18, 2024, specifically in

  response to Director Midkiff's discovery of Plaintiff's *actual* classification.

---

[2] ERB only determined its own jurisdiction under Oregon state employment law, not this Court's
jurisdiction over federal constitutional claims. ERB applied Oregon statutory requirements for
"principal assistant" designation under ORS 240.205(4) and found it did not itself have
jurisdiction over the actions that resulted in the reclassification or termination of Plaintiff's
management service. However, these findings do not have any effect on whether the very same
actions violated 42 U.S.C. § 1983. In fact, the lack of ERB's jurisdiction over claims of
procedural manipulation of the reclassification timing means that federal court review is the only
available remedy for the alleged violations. In other words, the jurisdictional gap makes federal
review under § 1983 essential.

Page 4 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO
DISMISS AND TO SUBSTITUTE AND TO STRIKE

- #23: Defendant Hathi issued a termination letter on June 21, 2024 (after receiving the approval), which ERB determined was simultaneously the final factor that allowed the State to consider Plaintiff to be an "unclassified employee."

Guerriero Decl., Ex. 1, at 7-8, 10-11. **In other words, ERB found that Plaintiff's termination letter served the dual purpose of stripping her of management service protections and terminating her employment in a single action**, meaning Individual Defendants' challenged conduct occurred while Plaintiff still possessed management service protections. Plaintiff continues to contend that this very sequence of events described in ERB's findings of fact violates procedural due process.

In fact, ERB explicitly found Plaintiff had management service rights for nearly 9 years until her termination, stating:

- "We determine, and the parties effectively agree, that [Plaintiff's] status as a member of the executive/unclassified service did not meet the statutory requirements for that service from her July 2015 hiring **until at least the June 18, 2024**, letter from DAS Director Leslie formally designating LJ's position as a [principal] assistant in executive/unclassified service." Guerriero Decl., Ex. 1, at 9 (emphasis added).

- "[. . .] we conclude that, **with the issuance of [Plaintiff's] termination letter on June 21, 2024**, OHA had satisfied the ORS 240.205 requirements to designate [Plaintiff's position as 'principal assistant.'" *Id.* at 11 (emphasis added).

Stated another way, ERB adopted the finding that Plaintiff objectively had management service protections for 9 years. The State did not object to the findings above or to the recommended

order. Defendants' frantic efforts to "cure the problem" of Plaintiff's protected employment status after deciding to terminate Plaintiff demonstrates that Defendants knew she had protected status at the time of the termination decision. However, constitutional due process does not (and should not) allow the State to strip an employee's management service protections without notice and contemporaneously with a termination letter.

### B. Material Misrepresentations Requiring Correction

Defendants' material misrepresentations about Plaintiff's claims and legal arguments require correction, particularly in light of their mischaracterizations of ERB's decision.

#### 1. Defendants Ignore *Ex Parte Young* in Official Capacity Argument (First, Second, Third, and Fourth Claims for Relief)

Defendants' argument regarding official capacity immunity under *Deep Sea Research* and *Pennhurst* ignores the *Ex Parte Young* doctrine argued by Plaintiff in her Response, which permits suits against state officials in their individual capacities for ongoing constitutional violations. Plaintiff alleges ongoing reputational harm and lack of redress. The fact that these harms stem from acts committed by state officials acting under color of law as described in the ERB decision strengthens, not diminishes, individual liability.

#### 2. Defendants' Arguments Regarding Property Interests Do Not Address the Relevant Issues (Third Claim for Relief)

First, Defendants' citation to the new ERB decision misconstrues Plaintiff's property interest allegations, which specifically assert that "Defendants Hathi, Sifuentez, Leslie, Midkiff, and Knieling deprived Plaintiff of her property interest in her employment by (a) effectuating a change from the "management service" to "unclassified service" **without notice or an**

**opportunity to be heard**, and (b) terminating her employment without **procedural due process**, including a failure to provide her with notice or an opportunity to be heard." Am. Compl. ¶ 81 (emphasis added). As described above, the ERB decision expressly found that Plaintiff possessed management service protections, and merely concluded that it did not have jurisdiction because Defendant Hathi's termination letter simultaneously stripped Plaintiff of her management service protections under the ORS 240 statutory scheme. This is precisely the type of procedural manipulation that Plaintiff is claiming federal civil rights law prohibits, including that the State cannot eliminate an employee's due process rights in this manner and with this motive.

Second, Defendants' discussion about *Engquist* continues to conflate and confuse the relevant issues. Plaintiff specifically alleges both procedural and substantive due process claims related to her property right. *Id.* ¶¶ 81-82. Defendants do not address Plaintiff's procedural due process count but move to dismiss her substantive due process count. Regarding Plaintiff's substantive due process claims, *Enguist* explicitly stated that the Ninth Circuit has not yet decided whether "substantive due process protects the right to a particular public employment position" and instead discusses only occupational liberty interests (which is Plaintiff's Fourth Claim for Relief). *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996–97 (9th Cir. 2007), *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008). Defendants' other citations to *Nicholas* and *Silva* are not directly on point. In contrast, the *Dunn* court explicitly described:

> "An employee has a constitutionally protected property interest in continued employment if he has a 'reasonable expectation or a "legitimate claim of entitlement" to it.' [] A legitimate claim of entitlement arises if it is created by existing rules or understandings that stem from an independent source, such as state

law. [] A statute, rule or contract may also confer the property interest. [] Here, the
District concedes that both plaintiffs had contracts for employment with it from July
1, 2008, through June 30, 2011. Therefore, each had a constitutionally protected
property interest in continued employment through the end date of the contracts."

(citations omitted). Similarly, here, Plaintiff has alleged a legitimate claim of entitlement to her

management service position for both her substantive and procedural due process claims.

Third, Defendants continue to misrepresent *Elliot v. Staton*, 2012 WL 2374986 (D. Or.

2012), by claiming that it establishes a categorical bar to substantive due process claims in the

employment context. *Elliot* merely reaffirmed that it is not a settled issue and analyzed qualified

immunity under the assumption that substantive due process rights *could* exist. The *Elliot* court

even discussed a case finding substantive due process rights when "school authorities ... make an

arbitrary and capricious decision significantly affecting a tenured teacher's employment status."

*Id.* Similarly, here, the Amended Complaint and the ERB decision describe the type of arbitrary

and capricious decision-making described in *Elliot.*

### 3. Defendants Mischaracterize Legal Issues Related to Name Clearing Hearings and Liberty Interests (Fourth Claim for Relief)

First, Defendants asked the Court to convert a limited portion of their motion to dismiss

(related to the publication of the termination letter) to a motion for summary judgment. In

response, Plaintiff requested leave to amend the Complaint to attach Dr. Hathi's letter, which

would make this matter most appropriate for resolution under the motion to dismiss standard for

the best use of the Court's resources at this early stage of litigation. However, should the Court

instead be inclined to convert this matter into a motion to summary judgment, the Court would

apply the more favorable summary judgment standard in viewing the evidence in the light most

favorable to the non-moving party and draw all reasonable inferences in Plaintiff's favor. And Plaintiff respectfully requests that she be given a reasonable opportunity to fully brief the issue and present all evidence and argument regarding the genuine issues of material fact concerning whether the statement is stigmatizing and/or defamatory. *See, e.g.,* ORCP 21(A)(2)(b) (requiring that when matters outside the pleadings are presented, "all parties will be given a reasonable opportunity to present affidavits, declarations, and other evidence.").

Second, Defendants falsely claim that Plaintiff's Response relies on "vague and generalized allegations" when it specifically enumerated six categories of statements. Am. Compl. ¶ 48. Defendants also mistakenly claim Plaintiff's Response failed to address the civil rights investigation delays although Plaintiff explicitly argued that allegations of causing "significant delays in investigating and closing OHA employees' civil rights complaints, ranging from sexual harassment to racial discrimination" implicated her moral fitness. Pl. Resp. at 17. And Defendants incorrectly suggest Plaintiff introduced new spokesperson allegations when the Amended Complaint in fact contains such a reference. Am. Compl. ¶ 51. Defendants also mischaracterize their own cited authority by arguing that *Campanelli* supports dismissal although that case includes nearly identical allegations that a coach caused players to be "in trouble psychologically" that were found stigmatizing.

Third, Defendants mischaracterize the publication requirement by suggesting Plaintiff must prove that Defendant Hathi had a direct role in publication. Plaintiff's Response argues that the constitutional violation stems from the creation and content of the stigmatizing statements themselves. Publication is a separate element that is satisfied by Defendants' own

acknowledgment that the termination letter was disclosed through public records requests. In any

event, Plaintiff is entitled to discovery on the Individual Defendants' role in the publication.

4. **Defendants Misapply Pleading Standards When Discussing Sufficiency of Allegations (First, Second, Third, Fourth, Sixth, and Tenth Claims for Relief)**

Defendants wrongly claim Plaintiff provided "scant" allegations when Plaintiff's

Response detailed each Individual Defendant's specific role. Defendants also incorrectly

describe Individual Defendants' acts as "ministerial," ignoring Plaintiff's argument that

Defendants deliberately circumvented due process protections. Even the ERB's detailed findings

of fact establish a timeline demonstrating the procedural manipulation that Plaintiff alleges:

- Finding #19 documents that "in mid-June 2024, OHA Director Hathi decided to
  terminate LJ's employment with OHA and directed Department HR staff to prepare the
  required documents."

- Finding #20 then establishes that "[a] day or two afterward, OHA HR Director Midkiff
  discovered that the documents in LJ's personnel file did not meet the requirements under
  ORS 240.205(4) for classification as principal assistant," prompting Midkiff to ask her
  staff to "source" an approval letter from DAS to "cure the problem." The ERB found that
  HR officials "exchanged several high priority emails and urgent chat messages" in this
  effort, including "requests for phone calls and meetings."

- Finding #23 confirms the simultaneity of the constitutional violation, noting Defendant
  Hathi issued the termination letter "after receiving the June 18 designation" and was "the
  final factor that allowed the State to consider Plaintiff to be an 'unclassified employee.'"

Defendants continue misrepresent their own standard by denying that they are demanding "smoking gun" evidence while simultaneously criticizing Plaintiff for lacking explicit proof of discriminatory intent. Circumstantial evidence, such as temporal proximity, is relevant and probative evidence under well-established precedent.

5. **Defendants' Arguments on Qualified Immunity Contradict the ERB's Findings (Third and Fourth Claims for Relief)**

First, Defendants inaccurately claim that the constitutional violations here are too "vague" to defeat qualified immunity; however, even the ERB decision establishes the specific, intentional conduct that defeats any immunity claim. For example, ERB describes that OHA deliberately reclassified Plaintiff's position to avoid statutory protections, with HR officials exchanging "high priority emails and urgent chat messages" to retroactively "cure the problem" of Plaintiff's management service status after the termination decision was made. Guerriero Decl. Ex. 1, at 7. Furthermore, ERB's decision confirms the surreptitious nature of the Individual Defendants' conduct, which defeats any claim of good faith: if the reclassification was legitimate, why did Defendants conceal it from Plaintiff entirely, completing the paperwork in secret just days before her termination rather than providing her with notice?

Second, the core protections against discriminatory termination, lack of due process, and reputational harm have been clearly established long before Plaintiff's termination. Even the ERB decision acknowledges that these Individual Defendants were HR professionals and agency directors whose job was to know and implement such requirements. Professional HR and management officials cannot claim qualified immunity for violating clearly established employment laws they were hired to implement. *See, e.g.*, *Cutler v. Stephen F. Austin State*

*University*, 767 F.3d 462, 473 (5th Cir. 2014) ("reasonable officials" should have known the

plaintiff's speech was protected and that terminating him would violate the First Amendment);

*Business Leaders in Christ v. University of Iowa*, 991 F.3d 969, 985 (8th Cir. 2021) (finding that

it was "clearly established that a university may not discriminate on the basis of viewpoint in a

public forum and reversing dismissal of individual defendants). Such a finding would incentivize

government HR departments to remain deliberately ignorant of the very laws that they are paid

to enforce. As such, Defendants' attempt to claim confusion about the applicable laws here fails.

In any event, any factual disputes over intent or impact preclude dismissal at this stage.

Third, Defendants criticize Plaintiff for not addressing qualified immunity on the First

and Second Claims for Relief. However, neither the heading nor the content of the section of

Defendants' initial briefing on qualified immunity specified that Defendants were seeking

qualified immunity on Plaintiff's First and Second Claims for Relief. Defs.' Mot. at 16-20.

Rather, Defendants only mentioned Plaintiff's Third and Fourth Claims for Relief, which are the

claims Plaintiff included in her heading. *Id.* Regardless, to the extent Defendants sufficiently

raised qualified immunity as to Plaintiff's First (Equal Protection) and Second (Race) Claims for

Relief, Plaintiff directly addressed the substance of this matter in her Response, stating:

> "While Defendant again attempts to hold Plaintiff to a heightened pleading
> standard at this early stage, a review of Plaintiff's Amended Complaint
> demonstrates she has sufficiently alleged clear constitutional violations: **the right
> to be free from racial discrimination and retaliation for engaging in
> protected activities** and the right to procedural due process violations. Unlike
> cases requiring a more nuanced legal analysis, the constitutional violations here
> represent well-known violations that any reasonable official would understand are
> unlawful. First, **Plaintiff's Amended Complaint thoroughly describes a
> pattern of disparate treatment that escalated following Plaintiff's protected
> complaints about racial discrimination. The right to be free from racial**

**discrimination in employment as well as the right to be free from retaliation for reporting racial discrimination has been clearly established for decades**. *See, e.g.,* Title VII, ORS 659A.030, ORS 659A.199, 42 U.S.C. 1983, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). **No reasonable official could believe that making employment decisions based on race or complaints of racial discrimination was constitutional**."

Pl.'s Resp., at 23 (emphasis added); *see also,* at 5 ("Fifth, their qualified immunity argument seeks to resolve factual disputes inappropriate for resolution at the motion to dismiss stage, particularly where the legal violations alleged – **racial discrimination, retaliation**, and denial of due process – have been clearly established for decades.").[3] Therefore, Defendants assertions that Plaintiff failed to address the First and Second Claims for Relief is simply inaccurate.

**C.  CONCLUSION**

For the reasons stated above and in Plaintiff's earlier Response (Dkt. #15), Defendants' Motions should be denied in their entirety. In the alternative, Plaintiff should be granted leave to file a Second Amended Complaint.

Dated: July 24, 2025.                          BEACON EMPLOYMENT LAW

  s/Talia Y. Guerriero
Talia Y. Guerriero, OSB #115271
talia@beaconforjustice.com
David C. Higgs, OSB #114193
david@beaconforjustice.com
Of Attorneys for Plaintiff

---

[3] This is also applicable to the claims of discrimination based on gender and/or intersections of Plaintiff's race and gender.

Page 13 of 13 – PLAINTIFF'S SURREPLY TO DEFENDANTS' PARTIAL MOTION TO DISMISS AND TO SUBSTITUTE AND TO STRIKE